**STATE of Minnesota, Respondent,**

v.

**Norman Ernst DUESTERHOEFT, Appellant.**

**No. 81–333.**

Supreme Court of Minnesota.

Nov. 6, 1981.

Gavin, Olson & Conkel and Terrence E. Conkel, Glencoe, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Peter Kasal, County Atty., Glencoe, for respondent.

SCOTT, Justice.

The sole issue on this appeal from judgment of conviction of aggravated driving while under the influence, Minn.Stat. § 169.129 (1980), is whether the trial court erred in denying defendant's motion to suppress, a motion based on the contention that the stop which led to defendant's arrest was illegal. We affirm.

At 11:30 p. m. on November 13, 1980, Russel Pettis, a deputy sheriff for McLeod County, on routine patrol northwest of Stewart on County Road 28, spotted defendant's truck. A month earlier Pettis had learned that defendant was the owner

of this truck and that defendant's driver's license was under suspension. When he spotted the truck on November 13, Pettis was unable to recheck the status of defendant's license because of a problem with the computer. However, believing that defendant's license was still under suspension, Pettis stopped the truck.

Defendant was unable to produce a license, and a subsequent check revealed that his license still was under suspension. Defendant also was uncooperative, scuffling with Pettis when Pettis tried to put him in the squad car. As Pettis scuffled with defendant, he smelled alcohol on defendant's breath.

Defendant was given citations for aggravated driving while under the influence, driving while under the influence, driving after revocation, and refusal to comply with a lawful police order. Subsequently he was charged by a substituted complaint with aggravated driving while under the influence and driving after revocation.

In order to avoid the time and expense of trial but yet preserve his right to appeal the ruling on the motion to suppress, defendant stipulated to the prosecutor's case. The trial court then found him guilty of the charge of aggravated driving while under the influence and dismissed the remaining charge of driving after revocation, even though the stipulation would have permitted a finding of guilty with respect to that charge also.

Defendant's jail sentence and fine have been stayed pending this appeal.

Defendant's suppression motion was based on the theory that the stop was illegal.

The district court, in rejecting this contention, relied upon *City of St. Paul v. Vaughn*, 306 Minn. 337, 237 N.W.2d 365 (1975). In that case two St. Paul police officers had information "a month or more old" that Frederick Vaughn was under a driver's license suspension. When they saw Dennis Vaughn, his brother, driving a vehicle they mistakenly believed that it was Frederick and stopped the car. Dennis, instead of waiting to talk to the officers, left the vehicle and ran into a store, where he abandoned some drugs, which the officers seized. In reversing the suppression order and upholding the stop, we stated in relevant part as follows:

Officer Zajac testified that he personally had run a license check on defendant's brother, Frederick Vaughn, approximately a month before this incident. Officer Patsy also testified that he had personal knowledge of Frederick Vaughn's suspension. However, it dated back to the preceding summer, a time span of 3 to 5 months.

A driver's license may be revoked for a period of 30 to 90 days for driving while under the influence, Minn.St. 169.121; for 6 months under our implied-consent law, § 169.123; and for longer periods under the general provisions for revocation, § 171.17, and suspension, § 171.18. Given those periods of suspension or revocation, and absent any knowledge on the part of Officers Zajac and Patsy that Vaughn's license had been reinstated, the stop here is not unreasonable under the standards set forth in *Terry v. Ohio* [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], and applied to automobile stops by this court in *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975). The added fact of mistaken identity should not render the stop invalid. The trial court apparently found that the officers acted in good faith, honestly believing that defendant was Frederick Vaughn. Determining the identity of a person observed for only a few moments as he passed Officer Zajac's and Patsy's squad car, and determining whether his license was currently suspended, certainly seems to be a legitimate purpose of investigative stops.

306 Minn. at 342–3, 237 N.W.2d at 368–9 (footnotes omitted).

In *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975), relied on in *Vaughn*, we held that police may not make investigatory stops of motor vehicles without first having "specific and articulable facts" establishing "reasonable suspicion" of a motor vehicle violation or criminal activity. The correct-

ness of our holding in *McKinley* was later confirmed by the United States Supreme Court's decision in *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

Here, as in *Vaughn*, we believe that the *McKinley* standard was met. The stop was not the product of whim or caprice or desire on the part of the officer to harass defendant. Rather, the officer believed that defendant's license was still under revocation and he reasonably suspected that defendant was the person driving the truck. The officer clearly did not have probable cause but we believe he did have reasonable suspicion based on the earlier license check. It would have been better if the officer had been able to recheck before making the stop, but the computer was apparently broken. Under the circumstances and bearing in mind that we are not dealing with an arrest or a search, only a stop, we conclude that the officer's actions did not violate the Fourth Amendment.

Affirmed.