STATE of Minnesota, petitioner, Appellant,

v.

John Keith PIKE, Respondent.

No. C5–95–1892.

Supreme Court of Minnesota.

July 3, 1996.

David J. Walker, Asst. County Attorney, Albert Lea, for Appellant.

Mark D. Nyvold, St. Paul, for Respondent.

OPINION

TOMLJANOVICH, Justice.

This is an appeal from a court of appeals' decision which affirmed a pretrial suppression order in a criminal case involving two gross misdemeanor charges of driving under the influence, and one misdemeanor charge of driving after revocation. After a pickup truck passed a Minnesota State Trooper as the trooper was entering Interstate 35W from the shoulder, the trooper stopped the truck because the owner had a revoked driver's license. The district court and court of appeals found that the stop violated the Fourth Amendment of the United States Constitution. We reverse.

On December 21, 1994, at approximately 11:17 p.m., Trooper Matthew Donald Nelson of the Minnesota State Patrol was on routine patrol on Interstate 35, southbound. He was moving back onto the traveled portion of the roadway from the shoulder with his overhead rear-facing lights activated when he saw respondent John Keith Pike's vehicle drive by.

Trooper Nelson entered the right lane and turned off his emergency lights. He began to accelerate and noticed that he quickly approached Pike's vehicle which was driving slowly. Trooper Nelson testified that when Pike's vehicle passed him, it was traveling between 45 and 50 mph. However, Pike testified that when he passed the trooper, he slowed only to 50 mph.

Trooper Nelson testified that, after entering the interstate, he kept his rate of speed slow but the more he slowed, the more Pike's vehicle slowed. The trooper stated that "it was like [Pike] wanted me to go by him and get out of this." He also testified at trial that at this point, the two vehicles had slowed to "a pretty slow rate * * * 35 miles

an hour." In his police report, however, he did not mention that Pike's vehicle was ever traveling this slowly. Further, Pike testified that he tried to keep an "even speed" and, after initially passing the trooper, was traveling at 55 mph.

Trooper Nelson testified that because of the vehicle's slow travel, he became suspicious and ran a computer check on the vehicle's license plate and discovered that the registered owner was John Keith Pike, a male with a date of birth of May 29, 1963. Trooper Nelson also testified that he saw a "lone male occupant in the vehicle that [he] believed to be in that right age category," by which he meant "about the age that the registered owner was." However, Pike testified that his truck was elevated on oversized tires and the headrest on the back of the seat covered the back of his head. Trooper Nelson ran a driver's license check on Pike and determined that his Minnesota driver's license had been revoked.

The trooper testified that based on the slow driving and the fact that the registered owner's license was revoked, he stopped the truck to investigate. Trooper Nelson also testified that he believed the registered owner was driving the vehicle because as a result of the driver's license check, he knew the registered owner to be a male in his early 30's and he recalled thinking that the driver was a younger male. Upon pulling the vehicle over, Nelson discovered that the driver was indeed the registered owner whose license had been revoked. Pike was later charged with two counts of driving under the influence in violation of Minn.Stat. §§ 169.129, 169.121, subds. 1(a) & 3(c) (1994), and one count of driving after revocation in violation of Minn.Stat. § 171.24, subd. 2. (1994).

The district court found that Trooper Nelson's stop "was the product of mere whim, caprice or idle curiosity." Thus, it suppressed evidence obtained as a result of the stop. It found, therefore, no probable cause for the charges and dismissed the case.

The court of appeals affirmed the district court. *State v. Pike*, 543 N.W.2d 96 (Minn. App.1996). It found that the district court rejected Trooper Nelson's testimony that he became suspicious when the vehicle slowed considerably. *Id.* at 98. Thus, the court of appeals determined that the only basis for the stop was the fact that the registered owner of the vehicle had a revoked license. *Id.* It then found that the trooper failed to "articulate a reasonable basis" for the stop. *Id.* The state appeals this decision.

■ In an appeal of a pretrial ruling suppressing evidence, this court will only reverse the district court if the state demonstrates "clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992) (quoting *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977)). The parties do not dispute that suppression of the evidence obtained by Trooper Nelson as a result of his stop will have a "critical impact on the outcome of the trial." Thus, the only issue before us is whether the district court was "clearly and unequivocally" erroneous in suppressing this evidence.

■ The Fourth Amendment to the United States Constitution, and article I of the Minnesota Constitution, proscribe unreasonable searches and seizures by the government of "persons, houses, papers and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Subject to only a few exceptions, searches conducted outside the judicial process are *per se* unreasonable. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). A limited investigative stop is lawful if the state can show the officer to have had a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *U.S. v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). A brief investigatory stop requires only reasonable suspicion of criminal activity, rather than probable cause. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). An actual violation of the vehicle and traffic laws need not be detectable. The police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was based upon "specific and articulable facts which, taken together with

rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880.

 In his testimony, Trooper Nelson articulated three grounds warranting the stop of Pike's truck: the truck was traveling unusually slow and was being driven as though the driver wanted the trooper "out of there"; the license of the registered owner was revoked; and the driver of the truck appeared to be of the same age and sex as the registered owner. Of these three grounds, the parties do not dispute that the trooper knew the truck owner's license was revoked.

With respect to the other two grounds, though, the court of appeals held that the district court "discredited or rejected" both "Nelson's testimony that he believed the driver was a younger male,"[1] and testimony that he "became suspicious when the vehicle slowed considerably."[2] *Pike,* 543 N.W.2d at 98. Pike argues that the court of appeals' interpretation of the district court's findings is correct. The state argues, on the other hand, that "the [district] court credited Trooper Nelson's testimony but simply concluded that he nevertheless acted whimsically when he stopped the defendant's vehicle."

Fortunately, we do not need to reach the issue of whether the district court credited Trooper Nelson's testimony on the above two articulated grounds for the stop. Rather, we find that this case can be decided based on Trooper Nelson's undisputed testimony, namely, that he was aware that the owner of the vehicle in question had a revoked license.

In *State v. Duesterhoeft,* 311 N.W.2d 866 (Minn.1981), an officer stopped a truck based on the knowledge that a month prior to the stop, the owner of the truck had a suspended license. *Id.* at 867. This court found the stop to be constitutional.

 When an officer observes a vehicle being driven, it is rational for him or her to infer that the owner of the vehicle is the current operator. Indeed, in *Duesterhoeft,* though it was not evident from the facts that the officer had any reason to believe that the owner was driving the vehicle, this court stated that "the officer * * * reasonably suspected that defendant was the person driving the truck." *Id.* at 869. Thus, we hold that the knowledge that the owner of a vehicle has a revoked license is enough to form the basis of a "reasonable suspicion of criminal activity" when an officer observes the vehicle being driven.

This holding, of course, applies only while the officer remains unaware of any facts which would render unreasonable the assumption that the owner is driving the vehicle. Thus, for example, if the officer knows that the owner of a vehicle has a revoked license and further, that the owner is a 22-year-old male, and the officer observes that the person driving the vehicle is a 50- or 60-year-old woman, any reasonable suspicion of criminal activity evaporates. Absent other articulable facts which would give rise to such suspicion, it would be unconstitutional for the officer to make a stop in such a situation. We hold that it is not unconstitutional for an officer to make a brief, investigatory, *Terry*-type stop of a vehicle if the officer knows that the owner of the vehicle has a revoked license so long as the officer remains unaware of any facts which would render unreasonable an assumption that the owner is driving the vehicle.

In the current situation, it is undisputed that Trooper Nelson knew that the owner of the vehicle he observed being driven on I-35W had a revoked license. Further, the trooper had no reason to believe that the vehicle's owner, Pike, was not driving the vehicle. Thus, we hold that Trooper Nelson's stop of Pike's truck was not unconstitutional and that evidence obtained as a result of the stop should not be suppressed.

Reversed and remanded.

---

1. The court of appeals stated that the district court rejected this testimony "based on Nelson's admission that he was unable to observe much about the driver because it was dark and because he only saw the driver from behind." *Pike,* 543 N.W.2d at 98.

2. The court of appeals found that the district court rejected Nelson's testimony on this point because Nelson admitted that "he never observed any unusual driving conduct." *Pike,* 543 N.W.2d at 98.