STATE of Minnesota, Respondent,

v.

**Shaun Martin COX, Appellant.**

No. A11–386.

Court of Appeals of Minnesota.

Nov. 28, 2011.

Lori Swanson, Attorney General, St. Paul, MN; and Matthew A. Staehling, Sartell City Attorney, Kirsten A. Lucken, Assistant City Attorney, St. Cloud, MN, for respondent.

Jenny Chaplinski, Special Assistant Public Defender, St. Cloud, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; WORKE, Judge; and SCHELLHAS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant motorist was stopped by a police officer on suspicion of stolen license-plate registration tabs when the officer observed a discrepancy between appellant's displayed 2010 tabs and information derived from the officer's mobile computer that indicated that the vehicle registration had expired in 2008. Appellant challenges his resulting driving-while-impaired (DWI) conviction, arguing that the stop and the expansion of the scope of the stop violated his constitutional rights. Because we conclude that the discrepancy between the displayed tabs and the information derived from the officer's computer provided an objectively reasonable basis for the stop and that the officer developed sufficient additional suspicion of appellant's intoxication to permit him to expand the scope of the stop consistent with appellant's constitutional rights, we affirm.

## FACTS

While on early-morning patrol on January 10, 2010, Sartell Police Officer James Thompson pulled behind appellant Shaun Cox's motor vehicle and entered Cox's license-plate number into his mobile computer. The search indicated that Cox's license-plate registration had expired in August 2008. This information was inconsistent with Officer Thompson's observation that Cox's license plate displayed a 2010 tab. Officer Thompson stopped the car based on the suspicion that Cox had stolen the displayed tab.

Officer Thompson approached Cox's vehicle and almost immediately noticed signs of Cox's intoxication. First, Cox had difficulty rolling down the window. When Cox did roll down the window, Officer Thompson smelled an odor of alcohol and observed that Cox had bloodshot, watery eyes. Officer Thompson asked about the

tabs, which he eventually confirmed were valid. Based on the observed indicia of intoxication, Officer Thompson conducted field sobriety tests, followed by a preliminary breath test that indicated an alcohol concentration of 0.144. Cox was charged with third-degree DWI. Cox moved to suppress the evidence obtained after Officer Thompson stopped his vehicle; the district court denied the motion. Cox subsequently stipulated to the state's case under Minn. R.Crim. P. 26.01, subd. 4. The district court convicted Cox of third-degree DWI. Cox appeals his conviction by challenging the district court's denial of his pretrial motion to suppress.

## ISSUES

I. Does a police officer have an objectively reasonable basis to conduct an investigatory stop of a vehicle after observing a discrepancy between the driver's current license-plate tabs and information derived from the officer's mobile computer?

II. Is a police officer justified in expanding the scope of the stop after approaching the driver and observing signs of a driver's intoxication?

## ANALYSIS

### I.

■ We begin by addressing the constitutionality of the investigatory stop of Cox's vehicle. The United States and Minnesota constitutions prohibit unreasonable searches and seizures. U.S. Const. amends. IV, XIV; Minn. Const. art. I, § 10. A limited investigative stop of a motor vehicle is a seizure, but it is permissible if the law-enforcement officer making the stop has a "particularized and objective basis" for suspecting that the person stopped is engaged in criminal activity. *State v. Pike*, 551 N.W.2d 919, 921 (Minn. 1996). The stop cannot be "the product of mere whim, caprice or idle curiosity." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)).

■ We review de novo the district court's determination that an officer had a particularized and objectively reasonable basis on which to make an investigatory stop. *State v. Britton*, 604 N.W.2d 84, 87 (Minn.2000). In doing so, we consider the totality of the circumstances and rely on the district court's findings of fact unless they are clearly erroneous. *Id.*

Cox argues that the stop was unconstitutional because Officer Thompson's suspicion was dispelled prior to questioning. *See State v. Hickman*, 491 N.W.2d 673, 675 (Minn.App.1992) (holding that it is unconstitutional for an officer to question a driver after the reasonable suspicion on which a stop is based has been dispelled). But Cox's argument incorrectly assumes that the basis for his stop was the officer's suspicion of expired tabs; in fact, the basis for the stop was the officer's suspicion of *stolen* tabs. This suspicion was not dispelled prior to questioning.

■ Cox argues alternatively that information obtained from Officer Thompson's mobile computer cannot, as a matter of law, be the sole basis to support reasonable suspicion for an investigatory stop.[1] There are essentially two requirements for a constitutional investigatory stop of a motor vehicle. First, the suspicion must be particularized to the individual vehicle. The United States Supreme Court and the Minnesota Supreme Court have long held that stopping cars at random is unconstitu-

---

1. Cox relies exclusively on our unpublished decision of *State v. Hirschuber*, No. A04–867, 2004 WL 2222142 (Minn.App. Oct. 5, 2004), upholding an investigatory stop based on a similar tab discrepancy and suspicious driving.

tional. *See Delaware v. Prouse,* 440 U.S. 648, 664, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) (holding that Delaware's practice of stopping cars to question drivers about their vehicle-registration status violates Fourth Amendment); *United States v. Brignoni–Ponce,* 422 U.S. 873, 883, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975) (holding that random, roving border stops designed to investigate smuggling violates Fourth Amendment); *State v. McKinley,* 305 Minn. 297, 299–302, 232 N.W.2d 906, 908–10 (1975) (holding that the random seizure of a driver to ask about license status was unconstitutional absent reasonable suspicion). We conclude that the suspicion for this stop was particularized; Officer Thompson stopped Cox's vehicle based on information that was unique to that vehicle.

■ The second requirement is that a stop must be objectively reasonable. For a stop to be objectively reasonable, the officer's belief of criminal activity must be reasonably inferable from the information available to the officer at the time, *see Britton,* 604 N.W.2d at 89, and the information available must be derived from a reasonably reliable source, *see, e.g., Pike,* 551 N.W.2d at 922 (providing an example that it is reasonable for an officer to rely on the information provided by the computer). In other words, the suspicion must be reasonably inferred based on reliable information.

We first address the question of whether Officer Thompson's inference that the tabs were stolen was reasonable. *Britton* and *State v. George* illustrate circumstances in which the supreme court concluded that the officer's belief of criminal activity was not objectively reasonable. *See Britton,* 604 N.W.2d at 89; *State v. George,* 557 N.W.2d 575, 578–79 (Minn.1997). In *Britton,* the supreme court held unconstitutional an automobile stop based on the

officer's suspicion that a vehicle was stolen because the suspicion was based only on the fact that one of the vehicle's windows was broken. 604 N.W.2d at 89. The supreme court emphasized that the officer's rationale "would support stopping any car at all with a broken window" and was therefore unreasonable. *Id.*

■ In *George,* the supreme court concluded that an officer's mistaken belief that a motorcycle headlight configuration was illegal did not constitute an objectively reasonable basis for the officer to stop the motorcycle. 557 N.W.2d at 578–79. The supreme court emphasized that the lights on the motorcycle are "standard equipment," "clearly" permissible under state law, and it was therefore not reasonable for the officer to infer criminal activity from the configuration. *Id.* Here, the officer's inference was reasonable. When a license plate displays 2010 tabs, but a computer check indicates that the vehicle's registration expired in 2008, it is objectively reasonable for an officer to infer that the 2010 tabs may have been stolen.

We next address the question of whether the information forming the basis for Officer Thompson's suspicion was derived from a reasonably reliable source. This requirement is presumed to be met when the officer's information is based on his observation. *See, e.g., State v. Duesterhoeft,* 311 N.W.2d 866, 866–67 (Minn.1981) (upholding an automobile stop based on the officer's one-month-earlier observation that the driver had a suspended license). We therefore examine whether vehicle registration information derived from an officer's mobile computer is sufficiently reliable to support a stop.

Indeed, stops based on information derived from officers' computers are routinely upheld. *See, e.g., Pike,* 551 N.W.2d at 921 (upholding a stop based on information from computer checks of a vehicle's li-

cense-plate number and the registered owner's driver's license status); *see also United States v. Cortez–Galaviz*, 495 F.3d 1203, 1206 (10th Cir.2007) (upholding a stop based on a computer check showing no information on a vehicle's required insurance); *United States v. Miguel*, 368 F.3d 1150, 1154 (9th Cir.2004) (upholding a stop based on an officer's reliance on erroneous computerized records); *United States v. Stephens*, 350 F.3d 778, 779–80 (8th Cir.2003) (upholding a stop based on a computer check indicating that a vehicle's tabs were "not on file" and that the registered owner's driver's license had expired).

■■ But a mobile computer, although typically reliable, can be determined to be unreliable when an officer is aware of facts that would make reliance on the information unreasonable. *See Pike*, 551 N.W.2d at 922 (noting that assumptions based on information can support a stop "so long as the officer remains unaware of any facts which would render unreasonable an assumption"). There is no evidence in this record to indicate that Officer Thompson had reason to believe that the information derived from his computer was erroneous. We therefore conclude that Officer Thompson's suspicion was based on information derived from a reliable source. Because this investigatory stop was particularized and objectively reasonable, we conclude that it was constitutional.

## II.

■ We next address Cox's argument that Officer Thompson was not justified in expanding the scope of the stop to inquire about Cox's apparent intoxication. If a stop is initially justified on one basis, an officer cannot expand the scope of the investigation without additional reasonable suspicion to support the expansion. *State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002). We review de novo whether the officer here had such additional reasonable suspicion. *Id.* at 129.

Cox argues that Officer Thompson's suspicion was dispelled upon observing current tabs. But as we have noted, the basis for the officer's stop was his suspicion of stolen tabs. This suspicion would not have been dispelled based solely on the observation of current tabs. As a result, the officer properly approached the vehicle to talk with Cox about the discrepancy. Because Officer Thompson immediately observed signs of Cox's intoxication when he approached him to inquire about the tabs, we conclude that Officer Thompson lawfully developed additional reasonable suspicion that supported the expanded scope of the initial stop.

## DECISION

Because Officer Thompson properly relied on information obtained from his mobile computer and because that information created a suspicious discrepancy concerning Cox's license-plate tabs, Officer Thompson had an objectively reasonable basis to stop Cox. Because Officer Thompson immediately observed signs of Cox's intoxication while questioning him, the officer lawfully expanded the scope of the investigatory stop to include Cox's possible impairment.

**Affirmed.**