STATE of Minnesota, Respondent,

v.

**Mark Wesley SETINICH, Appellant.**

No. A11–2303.

Court of Appeals of Minnesota.

Oct. 22, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and John J. Muhar, Itasca County Attorney, David S. Schmit, Assistant County Attorney, Grand Rapids, MN, for respondent.

Robert E. Mathias, Mathias Law Firm, Duluth, MN, for appellant.

Considered and decided by CONNOLLY, Presiding Judge; STONEBURNER, Judge; and ROSS, Judge.

## OPINION

CONNOLLY, Judge.

On appeal from his conviction of fifth-degree possession of a controlled substance and possession of drug paraphernalia, appellant argues that the district court erred in concluding that a state trooper had a reasonable, articulable suspicion to conduct an investigatory stop of his vehicle because the trooper did not have any reasonable suspicion of criminal activity at the time that he ran a check of appellant's license plate. Because the license-plate check was not a search under the Fourth Amendment and because the investigatory stop was supported by a reasonable suspicion of criminal activity, we affirm.

## FACTS

On August 12, 2010, a state trooper was driving his patrol car on Highway 2 in Itasca County, when he observed a red 2000 Ford Escort driving ahead of him. He ran a license-plate check on his squad computer, which revealed that the registered owner of the vehicle was appellant Mark Setinich. While running a license-plate check, the squad computer simultaneously runs a record check on the "status" of the registered owner of the vehicle, including the owner's date of birth, address, and physical description. The trooper observed the occupant of the vehicle and determined that the driver appeared to match the description of the registered owner. The license-plate check also revealed that the registered owner of the vehicle had a 100% hit score for a felony Department of Corrections (DOC) arrest warrant. The warrant information revealed that the vehicle's owner had a scar on his face.

After reviewing the information revealed by the license-plate check, the trooper pulled over appellant's vehicle. The trooper had not observed any unlawful driving conduct or equipment violations before the traffic stop. Upon approaching the vehicle, the trooper observed a scar on the driver's face and asked the driver if his name was "Mark," to which the driver responded in the affirmative. The driver's identity was subsequently confirmed to be that of appellant.

The trooper asked appellant to step out of the vehicle and whether he had anything illegal with him. Appellant indicated that he had something illegal in his front pocket. After placing appellant in handcuffs, the trooper searched appellant's person and recovered two baggies of marijuana from appellant's front pants pocket. A search of appellant's vehicle revealed additional marijuana and a pipe. Appellant was arrested on the DOC warrant and subsequently charged with possession of a controlled substance in the fifth degree, a felony, and possession of drug paraphernalia, a petty misdemeanor.

Appellant filed a motion to dismiss the complaint as a matter of law, alleging that the trooper did not have a particularized and objective basis for suspecting that appellant was involved in some type of criminal activity when he stopped appellant's vehicle. The district court denied appellant's motion, holding that the trooper had a particularized and objective basis for conducting an investigatory stop because the license-plate check gave the trooper a reasonable suspicion of criminal activity. The case was submitted to the district court for a *Lothenbach* proceeding pursuant to Minn. R.Crim. P. 26.01, subd. 4, and the district court convicted appellant on

both counts. Appellant appeals the district court's pretrial ruling.

## ISSUE

Is a computerized license-plate check a search under the Fourth Amendment?

## ANALYSIS

Appellant argues that the district court erred in finding that the state trooper had reasonable suspicion sufficient to conduct an investigatory stop of his vehicle because the trooper did not have any reasonable suspicion of criminal activity at the time that he ran a check of appellant's license plate. Before we consider the validity of the stop, we must first determine whether the computerized license-plate check was an improper search under the Fourth Amendment.

■ The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "The Fourth Amendment protects people, not places.... An individual may invoke the protection of the Fourth Amendment by showing that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *In re Welfare of B.R.K.,* 658 N.W.2d 565, 571 (2003) (quotation and citation omitted). Here, appellant did not have a reasonable expectation of privacy in his vehicle's license plate. A driver does not have a reasonable expectation of privacy in a license plate number which is required to be openly displayed. *See New York v. Class,* 475 U.S. 106, 114, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986) (noting that "it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile"); Minn.Stat. § 169.79, subd. 1 (2010) (requiring license plates to be "conspicuously displayed" on

vehicles). Moreover, unlike a physical stop to check the vehicle's license plate, a computerized license-plate check is not a seizure that implicates the Fourth Amendment. *State v. Henning,* 666 N.W.2d 379, 383 (Minn.2003) ("Generally, an officer stopping a vehicle on the open road in order to check the driver's license is a 'seizure' under the Fourth Amendment."). The trooper did not have to stop appellant's vehicle, or intrude upon appellant's freedom of movement in any way, to conduct the license-plate check. Rather, the trooper executed a noninvasive, electronic search of appellant's vehicle's license plate and registration.

■ The results of the computerized license-plate check revealed that the registered owner of the vehicle had a warrant out for his arrest. A police officer may conduct a brief investigatory stop, which "requires only reasonable suspicion of criminal activity, rather than probable cause." *State v. Pike,* 551 N.W.2d 919, 921 (Minn.1996) (citing *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). We review questions of reasonable suspicion de novo. *State v. Britton,* 604 N.W.2d 84, 87 (Minn.2000). An investigatory stop is valid where the police officer has a "particularized and objective basis for suspecting the particular persons stopped of criminal activity." *State v. Kvam,* 336 N.W.2d 525, 528 (Minn.1983) (quotation omitted). An objective basis exists so long as "the stop was not the product of mere whim, caprice or idle curiosity." *Pike,* 551 N.W.2d at 921.

■ The trooper's knowledge of the arrest warrant provided the minimal factual basis necessary to form reasonable suspicion to conduct an investigatory stop of a vehicle. *See Pike,* 551 N.W.2d at 922 (holding that where the officer knows that the owner of the vehicle in question has a

revoked license, there is reasonable suspicion to make the investigatory stop). Therefore, the stop was "not the product of mere whim, caprice or idle curiosity." *Id.* at 921. And it is reasonable for an officer to infer that the registered owner of the vehicle is the current operator of the vehicle where the officer remains unaware of any facts that would render that assumption unreasonable. *Id.* at 922. Here, the trooper not only lacked any information negating the assumption that the registered owner was driving the vehicle, he also testified that the vehicle's driver matched the description of the registered owner provided by the arrest warrant.

## DECISION

Because the license-plate check was not an improper search under the Minnesota or United States Constitutions and provided the trooper with reasonable suspicion to stop appellant's vehicle, we affirm.

**Affirmed.**