*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2082**

Daniel Roy Gibbs, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed July 21, 2014
Affirmed
Halbrooks, Judge**

Faribault County District Court
File No. 22-CV-12-796

Calvin P. Johnson, Elizabeth M. Levine, Calvin P. Johnson Law Firm, LLC, Mankato, Minnesota (for appellant)

Lori Swanson, Attorney General, Anne Fuchs, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Halbrooks, Judge; and Smith, Judge.

## U N P U B L I S H E D   O P I N I O N

**HALBROOKS**, Judge

On appeal from an order sustaining the revocation of his driver's license under the implied-consent law, Minn. Stat. §§ 169A.50-.53 (2012), appellant argues (1) the traffic stop was not supported by reasonable suspicion, (2) the officer improperly expanded the

traffic stop by asking him to exit his vehicle and asking about his earlier activities, (3) the warrantless test under the implied-consent law violated appellant's Fourth Amendment rights, and (4) the implied-consent procedure violates the unconstitutional-conditions doctrine. We affirm.

**FACTS**

On November 28, 2012, while on routine patrol at approximately 11:00 p.m., Officer Purvis of the Blue Earth Police Department observed a commercial motor vehicle without a rear license plate. He initiated a traffic stop of the vehicle because, in his experience, a missing license plate can indicate that the vehicle is not registered or is stolen. The officer did not know, nor could he tell from observing the moving vehicle, that the vehicle was registered under the International Registration Plan (IRP) and was based in Iowa, which, unlike Minnesota, does not require a rear license plate for IRP-registered trucks. The officer approached and asked the driver to exit the cab because, while seated, he was about five feet higher than the officer. The officer identified the driver by his Iowa driver's license as appellant Daniel Roy Gibbs.

The officer informed appellant of the basis for the stop, and the two walked to the rear of the vehicle and confirmed the absence of a rear license plate. While they were talking, the officer noticed that appellant's eyes were "slightly bloodshot" and that he had an odor of alcoholic beverage coming from him. The officer asked appellant if he had been drinking any alcoholic beverages that day, and appellant replied that he had had a few drinks at supper.

2

The officer asked appellant to perform two field sobriety tests and concluded, based on appellant's performance on the horizontal gaze nystagmus test, that appellant was under the influence of alcohol. The officer then administered a preliminary breath test, which resulted in a .08 reading. The officer determined that appellant was "under the influence for operating the vehicle that he was driving," and took him to the Faribault County Jail. At the jail, the officer read the Minnesota Implied Consent Advisory to appellant, who stated that he understood the advisory and did not wish to consult with an attorney. Appellant submitted to a breath test, which showed an alcohol concentration of .08. The officer did not attempt to obtain a search warrant before administering the breath test.

Appellant was issued a citation for fourth-degree DWI in a commercial motor vehicle under Minn. Stat. § 169A.20, subd. 1(6) (2012) (alcohol concentration of .04 or more), booked into jail, and released. The Commissioner of Public Safety ordered appellant's driver's license revoked, and a hearing was held on July 24, 2013. The district court denied appellant's motion to suppress the breath-test results and sustained his license revocation, ruling that (1) the traffic stop was valid; (2) the officer had reasonable, articulable suspicion of criminal activity to expand the stop beyond its original scope; (3) the breath test was supported by consent; and (4) the implied-consent process did not violate appellant's constitutional rights. This appeal follows.

# DECISION

## I.

We review de novo a district court's determination of reasonable suspicion as it relates to investigatory stops. *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997). We determine whether the officer had a reasonable basis to justify the stop by looking to "the events surrounding the stop and consider[ing] the totality of the circumstances." *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

Under the United States and Minnesota Constitutions, unreasonable searches and seizures are prohibited. U.S. Const. amend. IV; Minn. Const. art. I, § 10. An officer may conduct a limited investigatory stop if the officer has reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968). And "[g]enerally, if an officer observes a violation of a traffic law, no matter how insignificant the traffic law, that observation forms the requisite particularized and objective basis for conducting a traffic stop." *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004).

The threshold for meeting the reasonable, articulable suspicion standard is not high. *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008). To meet the reasonable, articulable suspicion standard, an officer must "show that the stop was not the product of mere whim, caprice or idle curiosity" but rather "was based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Pike*, 551 N.W.2d 919, 921-22 (Minn. 1996) (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880). The reasonable, articulable suspicion standard is met when the officer "observes unusual conduct that leads the officer to reasonably conclude in

4

light of his or her experience that criminal activity may be afoot." *Timberlake*, 744 N.W.2d at 393.

Here, the officer suspected that the vehicle may have been unregistered or stolen based on the absence of a rear license plate. Commercial vehicles such as the one appellant was driving[1] are generally required by Minn. Stat. § 169.79, subd. 3 (2012), to display rear license plates. The district court found that the traffic stop was valid because, based on the facts available to the officer, it was reasonable to suspect that the commercial vehicle was being operated in violation of Minn. Stat. § 169.79, subd. 3. As the district court found:

> At the initiation of the stop, Officer Purvis reasonably believed that all vehicles in Minnesota were required to have a rear license plate. Further, he did not know at the initiation of the stop that the truck was licensed in the [s]tate of Iowa, that the truck was registered in the [IRP], or that the truck was not required to have a rear license plate under Iowa guidelines of the [IRP].

The district court therefore determined that the officer's belief that a required rear license plate was missing was not a mistake of law.

Generally, an officer's mistake of what the law requires cannot support a traffic stop based on a violation of that requirement. *Anderson*, 683 N.W.2d at 823-24 (holding that an officer's mistaken belief that defendant had violated a traffic law by failing to

---

[1] Appellant argues for the first time on appeal that even if his vehicle was based in Minnesota it would not be subject to Minn. Stat. § 169.79, subd. 3, because it is a truck-tractor that would be subject to Minn. Stat. § 169.79, subd. 5 (2012). Appellant did not make this argument to the district court. We generally do not consider arguments that were not raised to the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). We therefore decline to do so here.

5

provide a buffer lane between his vehicle and a police car did not justify the traffic stop); *State v. George*, 557 N.W.2d 575, 578-79 (Minn. 1997) (holding that a police officer's mistaken belief that headlight configuration on defendant's motorcycle was illegal did not justify the traffic stop). But a mistake of fact does not invalidate a stop as long as the mistake is reasonable. *See State v. Johnson*, 392 N.W.2d 685, 687 (Minn. App. 1986) (holding that a mistake in identity does not render a stop invalid). Here, the officer could not determine from visual inspection of appellant's moving vehicle that it was licensed under the IRP, based in Iowa, in compliance with Iowa licensing requirements, and therefore in compliance with Minnesota law under reciprocity rules. *See* Minn. Stat. §§ 168.181, .187 (2012). Further investigation of the absent license plate was required.

In *State v. Barber*, the Minnesota Supreme Court upheld the stop of a vehicle with its license plates secured with baling wire. 308 Minn. 204, 204-05, 241 N.W.2d 476, 476 (1976). The officer stopped the vehicle on the suspicion that the license plates may have been stolen because they were not bolted on. *Id*. at 205, 241 N.W.2d at 476. The stop was upheld because it was not based on "mere whim, caprice, or idle curiosity." *Id*. at 207, 241 N.W.2d at 477. Similarly, in *State v. Cox*, this court held that, although a vehicle displayed a current vehicle registration sticker, a stop to determine if the sticker was stolen was justified by an erroneous motor vehicle database entry that showed that the vehicle's registration had expired. 807 N.W.2d 447, 452 (Minn. App. 2011).

This stop was not "the product of mere whim, caprice or idle curiosity" but rather "was based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Pike*, 551 N.W.2d at

6

921-22 (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880). Because the officer could not have determined that the vehicle was properly licensed without stopping it, we agree with the district court that if there was a mistake, it was a mistake of fact, not of law, and that any mistake was reasonable. We therefore conclude that the stop of appellant's vehicle was supported by reasonable, articulable suspicion.

## II.

Appellant argues that the traffic stop was improperly expanded by (1) the officer's request of appellant to exit the vehicle and (2) the officer's questions about appellant's earlier activities. The scope and duration of a traffic stop is limited to what is necessary to dispel the suspicion of criminal activity that justified the stop. *State v. Fort*, 660 N.W.2d 415, 418 (Minn. 2003). But expansion beyond the original basis for the stop is permitted when there is reasonable, articulable suspicion of criminal activity beyond the initial reason for the stop. *State v. Wiegand*, 645 N.W.2d 125, 129 (Minn. 2002). Appellate courts review de novo whether additional reasonable suspicion is present to justify expansion of a stop. *Id.*

The basis for the stop here was the absence of a rear license plate on the vehicle. The officer testified that he asked appellant to exit the vehicle for officer-safety reasons, because it was dark, it was late at night, and the height of the cab "put[] me in a dangerous situation I don't care to be put in." "[A] police officer may order a driver out of a lawfully stopped vehicle without an articulated reason." *State v. Askerooth*, 681 N.W.2d 353, 367 (Minn. 2004). The district court did not err by ruling that the officer properly asked appellant to exit the vehicle.

7

Appellant also challenges the officer's questions about his activities earlier in the evening. The officer testified that he made this inquiry because he smelled an odor of alcoholic beverage, and he noticed that appellant's eyes were bloodshot. This court has held that a faint odor of alcohol coming from a car is sufficient to expand a stop beyond its original basis. *State v. Lopez*, 631 N.W.2d 810, 814 (Minn. App. 2001), *review denied* (Minn. Sept. 25, 2001). We have also held that when an officer "immediately observed signs of . . . intoxication" upon approaching a vehicle to inquire about a license-plate-registration sticker discrepancy, the expansion of the stop was justified. *Cox*, 807 N.W.2d at 452. Under Minnesota law, there is a lower per se limit of alcohol concentration for drivers of commercial motor vehicles. Minn. Stat. § 169A.20, subd. 1(6). Because appellant was operating a commercial motor vehicle, had bloodshot eyes, and smelled of alcoholic beverage, the district court properly ruled that the officer had reasonable suspicion of unlawful conduct that was sufficient to expand the traffic stop beyond its original purpose.

### III.

Appellant argues that the district court erred by ruling that a search warrant was not required and that he voluntarily consented to the breath test. The United States and Minnesota Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Taking and testing a blood, breath, or urine sample constitutes a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-18, 109 S. Ct. 1402, 1412-13 (1989). A warrantless search is

8

unreasonable unless it falls within an exception to the warrant requirement. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007).

A warrantless search is valid if the person voluntarily consents to the search. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The state bears the burden of showing by a preponderance of the evidence that the defendant freely and voluntarily consented. *Id.* Whether consent is given freely and voluntarily is determined by examining the "totality of the circumstances." *Id.* (quotation omitted). The totality of the circumstances includes "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 569 (quoting *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994)).

Appellant was arrested for driving under the influence, was read the implied-consent advisory, stated that he understood it, declined the opportunity to consult with an attorney, and agreed to submit to a breath test. The totality of the circumstances supports a conclusion that appellant voluntarily consented to the breath test.[2] No evidence suggests that appellant was coerced to submit to the breath test, and the record reflects that the officer properly followed all of the procedures established under the implied-consent law. Because appellant's consent was given freely and voluntarily, a search warrant was not required. The district court did not err in ruling that a search warrant was not required and that appellant voluntarily consented to the breath test.

---

[2] Appellant also argues that because he was not read the *Miranda* warning, he could not have voluntarily consented to a breath test. Appellant did not raise this argument to the district court. We decline to address it here. *See Thiele*, 425 N.W.2d at 582.

## IV.

Appellant also challenges the constitutionality of the implied-consent statute because it includes criminal penalties for test refusal. Our supreme court held in *Brooks* that fear of the criminal consequence for refusing to test under the implied-consent law does not make consent to test involuntary. 838 N.W.2d at 570-72. Appellant's constitutional challenge to the implied-consent statute is without merit.

**Affirmed.**