*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1586**

Lester Leroy Hiltz, Jr., petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed June 15, 2015
Affirmed
Bjorkman, Judge
Dissenting, Johnson, Judge**

Beltrami County District Court
File No. 04-CV-14-1762

John (Ben) Wangberg, Fuller, Wallner, Cayko, Pederson & Huseby, Ltd., Bemidji, Minnesota (for appellant)

Lori Swanson, Attorney General, William J. Young, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Johnson, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges the revocation of his driver's license under the implied-consent statute, arguing that the evidence of his alcohol concentration should have been

suppressed because the stop of his vehicle was not justified by reasonable suspicion of criminal activity. We affirm.

## FACTS

Early in the morning on May 10, 2014, Beltrami County Sheriff's Deputy Charles Nelson observed a vehicle driving in front of him. The vehicle changed lanes, and Deputy Nelson did not see a turn signal. Minnesota law requires drivers to signal before changing lanes. Deputy Nelson executed a traffic stop based on the apparent traffic violation. He identified the driver as appellant Lester Hiltz. Because Hiltz exhibited indicia of intoxication, Deputy Nelson placed him under arrest. A subsequent breath test revealed that Hiltz had an alcohol concentration above the legal limit. Hiltz was charged with driving while impaired, and respondent Minnesota Commissioner of Public Safety revoked Hiltz's driver's license.

Hiltz filed a petition for judicial review of his license revocation, arguing that Deputy Nelson did not have a valid basis to stop Hiltz's vehicle because he had signaled his lane change. At the hearing on Hiltz's petition, Deputy Nelson testified that he believed at the time of the stop that Hiltz had not signaled but realized, upon reviewing the squad car video footage immediately before the hearing, that Hiltz activated his turn signal "right before and as" he was changing lanes; it gave "two quick blinks." Deputy Nelson stated that visibility the night of the stop was "[n]ot ideal"—the street was well lit, but it was drizzling and the road surface was wet, causing some glare in the windshield. He also explained that his job not only requires him to look for traffic violations, but he must simultaneously make general observations about his surroundings,

2

maintain computer communications, and monitor two cell phones, a two-way radio, and a PA system.

The district court sustained Hiltz's license revocation, determining that the stop was justified because Deputy Nelson honestly and reasonably believed that Hiltz committed a traffic violation. Hiltz appeals.

## D E C I S I O N

The Fourth Amendment to the United States Constitution prohibits "unreasonable searchs and seizures." U.S. Const. amend. IV. "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014). We review the constitutionality of a traffic stop de novo. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010). In doing so, we defer to the district court's factual findings unless they are clearly erroneous. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). But we independently determine questions of reasonableness. *See id.*

To justify a brief investigatory traffic stop, police require only reasonable suspicion of criminal activity. *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001). "The reasonable-suspicion standard is not high." *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011) (quotation omitted). Police must only show that the stop was based on more than "an inchoate and unparticularized suspicion or hunch." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotation omitted). A stop will be upheld when police can articulate a particular objective basis for the stop. *Id.*

3

A traffic violation, no matter how insignificant, generally provides such a basis. *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004). But an officer need not witness an actual violation. *State v. Pike*, 551 N.W.2d 919, 921 (Minn. 1996). Police are permitted to draw inferences from available facts, relying on their training and experience, in articulating reasonable suspicion of criminal activity. *State v. Smith*, 814 N.W.2d 346, 352 (Minn. 2012). Such inferences are not always accurate, nor must they be to be reasonable. *See Illinois v. Rodriguez*, 497 U.S. 177, 185-86, 110 S. Ct. 2793, 2800 (1990); *see also Heien*, 135 S. Ct. at 536 ("To be reasonable is not to be perfect . . . ."). "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Rodriguez*, 497 U.S. at 185, 110 S. Ct. at 2800 (quotation omitted). Accordingly, even a mistaken belief that a particular driver committed a traffic violation can justify a traffic stop if the mistake is "*objectively* reasonable." *See Heien*, 135 S. Ct. at 539; *City of St. Paul v. Vaughn*, 306 Minn. 337, 342-43, 237 N.W.2d 365, 368-69 (1975) (holding stop justified because officer reasonably mistook defendant for his brother, whose license was recently revoked); *State v. Johnson*, 392 N.W.2d 685, 687 (Minn. App. 1986) (holding stop justified because officer was reasonably mistaken as to which vehicle committed traffic violations).

This case requires us to consider when a factual mistake is objectively reasonable. As a general proposition, a factual determination bearing upon a search or seizure is objectively reasonable when "'the facts available to the officer at the moment'" would justify "'a [person] of reasonable caution'" in believing it. *Rodriguez*, 497 U.S. at 188, 110 S. Ct. at 2801 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880

4

(1968)). An inference is objectively unreasonable if it is too attenuated or contrary to facts the officer actually knows or observes. *See State v. Burbach*, 706 N.W.2d 484, 489 (Minn. 2005) (holding that it is unreasonable to infer open-container violation based solely on oder of alcohol from adult passenger); *Pike*, 551 N.W.2d at 922 (explaining that inference that driver of vehicle is registered owner, whose license is revoked, would be unreasonable if officer observes that driver is of a different age or sex than the registered owner). Within these parameters, an officer may be reasonably mistaken as to the identity of the person who committed an actual violation, *e.g., Vaughn*, 306 Minn. at 342-43, 237 N.W.2d at 368-69; *Johnson*, 392 N.W.2d at 687, or reasonably mistaken as to whether a violation occurred, *e.g., Heien*, 135 S. Ct. at 540.

Deputy Nelson mistakenly believed that Hiltz committed a traffic violation by failing to activate his turn signal before changing lanes. Whether that mistake was reasonable turns on the facts available to the deputy at the time of the stop. The district court made three findings of fact relevant to this inquiry: (1) glare caused by the damp conditions limited Deputy Nelson's visibility; (2) the deputy's attention was divided between monitoring Hiltz's compliance with traffic laws and performing other tasks necessary to his job, such as attending to the many instruments and devices within his squad car; and (3) Hiltz's signal was two blinks ending in the middle of his lane-change maneuver. The record supports these findings. And these findings explain how Deputy Nelson reasonably failed to observe the turn signal.

Hiltz argues that Deputy Nelson's mistake was not reasonable because it was "objectively determinable" from the video evidence that he in fact used his turn signal.

5

We are not persuaded. The video depicts part of what occurred in front of Deputy Nelson's squad car at the time of the stop. As such, it bears on the credibility of the deputy's testimony about what he observed and why he suspected that Hiltz violated the law. *See State v. Shellito*, 594 N.W.2d 182, 186 (Minn. App. 1999) (stating that we defer to the district court's factual findings based on squad car video evidence the same as findings based on oral or documentary evidence). But it does not reflect the entirety of the circumstances under which Deputy Nelson was operating when he decided to stop Hiltz. And it is not information "available" to the deputy at the time of the stop within the meaning of *Terry*.

Careful review of the video in the quiet of a courtroom confirms that Hiltz activated his turn signal. It equally confirms that the perfunctory signal was difficult to see and easily missed during even the briefest of distractions, such as checking the clock or speedometer. It is reasonable to suspect that something so easily missed did not occur; such an inference is a matter of probability, not a hunch. While Deputy Nelson's mistake relieves Hiltz of liability for a lane-change violation, it does not invalidate the traffic stop. *See Heien*, 135 S. Ct. at 540 (explaining that a mistaken belief cannot justify the imposition of criminal liability but may nonetheless justify an investigatory stop). On this record, we conclude that Deputy Nelson's mistaken belief that Hiltz failed to signal his lane change is objectively reasonable. The district court did not err by denying Hiltz's motion to suppress and sustaining the revocation of his driver's license.

**Affirmed.**

6

**JOHNSON**, Judge (dissenting)

I respectfully dissent from the opinion of the court. The district court should have granted Hiltz's motion to suppress evidence because Deputy Nelson stopped Hiltz's vehicle based on a mistake that was not a reasonable mistake for Fourth Amendment purposes.

The district court made only two findings of fact that are relevant to its conclusion that Officer Nelson's mistake was reasonable. First, the district court found, "That night it had lightly rained on and off, the road surfaces were wet causing glare, and the Deputy's visibility was not ideal." Second, the district court found, "Deputy Nelson . . . testified that on a daily basis there are many instruments, devices, and necessary duties placed on an officer on patrol than can cause an officer to be distracted, but are nonetheless necessary to fulfill his duty as a peace officer." In the final paragraph of the memorandum accompanying its order, the district court concluded, "The Deputy's mistake as to whether Petitioner used his turn signal to change lanes was reasonable and does not invalidate the otherwise valid stop."

The district court did not expressly state whether its legal conclusion is based on the first finding quoted above, the second finding quoted above, or both of those findings. The district court also did not expressly find that either less-than-ideal visibility or distraction caused Deputy Nelson's mistake as to whether Hiltz signaled his lane change. But such a finding must be implied because the district court's conclusion that Deputy Nelson's mistake was reasonable must be based on at least one of those two findings.

D-1

The district court's first implied finding (that less-than-ideal visibility caused Deputy Nelson's mistake) would support the conclusion that Deputy Nelson's mistake was reasonable if that finding were correct, but it is clearly erroneous. Deputy Nelson's testimony does not support such a finding. He admitted that the video-recording shows that Hiltz signaled his lane change, but he did not say that he made a mistake because of less-than-ideal visibility. Furthermore, the first implied finding is contradicted by the video-recording created by Deputy Nelson's dashboard video-camera, which shows that Hiltz's signal was visible. Presumably Deputy Nelson had the same point of view as his dashboard video-camera. Yet the district court did not explain how less-than-ideal visibility prevented Deputy Nelson from seeing Hiltz's signal but allowed his dashboard video-camera to capture Hiltz's signal. Moreover, the district court did not explain how Deputy Nelson could have seen Hiltz's lane change without seeing his signal. The video-recording shows that the signal and the lane change are overlapping in time and occur within the span of only a few seconds. The evidence in the record reasonably leads to only one factual finding: that less-than-ideal visibility did *not* cause Deputy Nelson's mistaken belief that Hiltz failed to signal his lane change. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1775 (2007) (concluding that no genuine issue of material fact exists because dashboard video-recording "quite clearly contradicts the version of the story told by" plaintiff in section 1983 case).

The district court's second implied finding (that distraction caused Deputy Nelson's mistake) is less infirm as a factual matter, but it does not allow for the legal conclusion that Deputy Nelson's mistake was reasonable. The United States Supreme

Court has held that a law-enforcement officer's mistake when performing a search or investigatory stop might not invalidate the search or stop for purposes of the Fourth Amendment. *See Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014); *Illinois v. Rodriguez*, 497 U.S. 177, 184, 110 S. Ct. 2793, 2799 (1990); *Maryland v. Garrison*, 480 U.S. 79, 85, 107 S. Ct. 1013, 1017 (1987); *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 1311 (1949). But those holdings are based on the premise that a law-enforcement officer often has imperfect information and, thus, can be expected only to make reasonable assessments of a situation based on the information available to him or her at that time. For example, in *Garrison*, police officers executed a search warrant for the third floor of a residential building based on the mistaken but reasonable assumption that all of the third floor was a single apartment when, in fact, the third floor was divided into two apartments. 480 U.S. at 80, 107 S. Ct. at 1014. The Court reasoned that, even though the officers made a mistake, "we must judge the constitutionality of their conduct *in light of the information available to them at the time they acted*." *Id.* at 85, 107 S. Ct. at 1017 (emphasis added). Similarly, in *Rodriguez*, police officers searched a home with the consent of a person in the home based on the mistaken but reasonable assumption that the person had authority to consent to the search. 497 U.S. at 180, 110 S. Ct. at 2797. The Court explained that, even though the officers made a mistake, it was necessary to apply "an objective standard" by asking, "would *the facts available to the officer at the moment* . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Id.* at 188, 110 S. Ct. at 2801 (emphasis added) (internal quotation marks omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct.

1868, 1880 (1968)); *see also Brinegar*, 338 U.S. at 177, 69 S. Ct. at 1311-12 (concluding that officers mistakenly but reasonably suspected person of unlawfully importing alcoholic beverages from one state to another state based on "facts within the officers' knowledge" about suspect's prior activities); *cf. Berge v. Commissioner of Pub. Safety*, 374 N.W.2d 730, 731-32 (Minn. 1985) (concluding that officer reasonably suspected driver of running stop sign even though officer's view of scene was partially blocked).

Thus, if a person claims that an investigatory stop is a violation of the Fourth Amendment because an officer's determination of reasonable suspicion was based on a mistake, the focus of the inquiry is the information available to the officer at the time of the stop. The Supreme Court's caselaw clearly provides that an officer's mistaken reason for an investigatory stop may be reasonable, even if mistaken, if clear and accurate information was not available to the officer at that time. *See Rodriguez*, 497 U.S. at 184, 110 S. Ct. at 2799; *Garrison*, 480 U.S. at 85, 107 S. Ct. at 1017. But nothing in the Supreme Court caselaw suggests that an officer's mistaken reason for a stop may be deemed reasonable if clear and accurate information *was* available to the officer at the time but the officer failed to perceive it due to inattentiveness, divided attention, distraction, or similar intervening factors. Such a conclusion would be inconsistent with the well-established objective standard, which asks: "would *the facts available to the officer at the moment of the seizure or the search* warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1880 (emphasis added) (quotations omitted); *see also Rodriguez*, 497 U.S. at 188, 110 S. Ct. at 2801 (citing *Terry* for objective standard).

In this case, the information available to Deputy Nelson at the time of the stop was available to the district court, and is available to this court, in the form of the video-recording. There is no evidence and no finding that the video-recording depicts anything other than what Deputy Nelson saw or could have seen through his windshield. The video-recording shows with certainty that Hiltz signaled his lane change. Deputy Nelson's mistaken belief that Hiltz did not signal his lane change cannot be deemed reasonable, for Fourth Amendment purposes, on the ground that the deputy had other responsibilities that prevented him from observing Hiltz's signal. That is not to say that the deputy's overall performance was unacceptable. Naturally there are limits to a single person's ability to achieve all aspects of a demanding, multi-faceted job. But this case is concerned with Hiltz's constitutional right to be free from unreasonable searches and seizures. *See* U.S. Const. amend. IV. In that context, the deputy's mistaken belief that Hiltz failed to signal his lane change, when in fact Hiltz did signal his lane change, should not convert an objectively unreasonable stop into a stop that satisfies the Fourth Amendment's reasonableness requirement.

I stated above that the district court made only two findings of fact that are relevant to its conclusion that Officer Nelson's mistake was reasonable. The district court did not make a finding that Hiltz's signal was too short in duration, either in comparison to the norm or to the law. Accordingly, the district court did not make an implied finding that the brevity of Hiltz's signal caused Deputy Nelson's mistake, and the evidentiary record would not have allowed such a finding. Deputy Nelson's testimony indicates that Hiltz's signal was not unduly brief because he testified that Hiltz's signal

"was two quick blinks *like any other signal*." (Emphasis added.) A driver is required by statute to use a signal for 100 feet before changing lanes. *See* Minn. Stat. § 169.19, subds. 4-5 (2014). There was no testimony at the hearing as to whether Hiltz complied with this statute. Depending on his speed, Hiltz could have traveled 100 feet during the time necessary for two blinks of his signal. The brevity of Hiltz's signal actually makes Deputy Nelson's mistake less reasonable, not more reasonable. If Hiltz's signal was typically brief, and if a typical signal may be performed within the time that the officer looked away to attend to other duties, then the officer is *not* reasonable in believing that the driver failed to do something that the officer would have missed while looking away. In any event, the district court's order says nothing to suggest that the brevity of Hiltz's signal caused Deputy Nelson's mistake. That justification for the officer's stop has been introduced into the Fourth Amendment analysis for the first time on appeal.

For these reasons, I would conclude that the district court erred by denying Hiltz's motion to suppress evidence. Therefore, I would reverse the district court's dismissal of Hiltz's petition to rescind the commissioner's revocation of his driver's license.