**Petition of PEOPLES GAS SYSTEM, Inc.**
Docket No. 72446-GU. Order No. 5597.
Florida Public Service Commission.
December 11, 1972.

William C. Steel and Matthew M. Childs, Miami, for the petitioner.

Robert C. Matthias, Orlando, for Thatcher Glass Mfg. Co., intervener.

Harry D. Boswell and Donald R. Alexander, Tallahassee, for the commission staff and the public generally.

Chairman WILLIAM H. BEVIS, Commissioners WILLIAM T. MAYO and JESS YARBOROUGH participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to notice, the commission held a public hearing in this matter in Fort Lauderdale on October 10, 1972. Having fully considered the entire record herein, the commission now enters its order in this cause.

*Nature of the proceeding:* Peoples Gas System, Inc. (hereinafter sometimes called Peoples, the company, or petitioner) is a public utility subject to this commission's jurisdiction, and engages in the sale and distribution of natural gas throughout its service area, which consists of two divisions. One is the West Coast Division which serves Tampa and vicinity; the other is the East Coast Division which extends along the lower east coast of Florida from Fort Lauderdale through Miami Beach. Presently, petitioner serves approximately 72,000 customers in its East Coast Division, and 23,000 customers in its West Coast Division.

By its petition filed in this docket, Peoples has alleged its present rates and charges are insufficient to enable it to pay the increased capital, construction, operating and maintenance costs, and at the same time, yield the company just and reasonable compensation for the service rendered and a fair return on its investment. It asks that this commission establish a fair rate of return within a range of 8.94% to 9.10% and requests that it be authorized to increase its rates and charges so as to produce annual additional gross revenues of $1,860,000.

Simultaneously with the filing of its petition, the company has filed a motion for emergency increase under bond, wherein it seeks authority to immediately place in effect its proposed increase in rates and charges conditioned, of course, upon its filing a good and sufficient bond to guarantee prompt refund of all excess collections, if any, after a full hearing on its petition. Public hearings have been held on said motion, and all interested parties have been given the opportunity to fully brief this matter. Several customers have formally intervened in this docket in opposition to the proposed increases; however, only Thatcher Glass Company, a customer in the West Coast Division, actually participated in the public hearings and filed a brief in opposition to the motion.

### Statutory requirements

No one questions this commission's authority to grant emergency interim rate relief under certain circumstances and conditions. Such relief has been granted in various prior commission rate proceedings. See, for example — Re: Southern Bell Telephone & Telegraph Company, 80 PUR N.S. 161 (1949); Re: Application of F.I.R.B., Docket No. 6432-CCT (1963); Re: General Telephone Company of Florida, 76 PUR 3d 380 (1968); Re: Southern Bell Telephone & Telegraph Company, 76 PUR 3d 410 (1968); Re: Application of F.I.R.B., Docket Nos. 8928-CCT and 8929-CCT (1967); Re: Application of Dixie Transport Company, Docket No. 9178-CCT (1969); Re: Florida State Telephone Company, 80 PUR 3d 454 (1969); and Re: Petition of Gulf Coast Motor Line, Inc. and Southern Tours, Inc., Docket No. 9797-CCB (1969).

Certain procedural requirements must, of course, be met in order that such relief be lawfully granted. The pertinent provisions of the law are found in §366.06(3), F.S., which provides in part as follows —

> "Section 366.06. — *Rates; procedure for fixing and changing.*
> (1) * * *
> (2) * * *
> (3) Whenever the commission shall find, upon request made . . . that the rates demanded, charged or collected by any public utility . . . are insufficient to yield reasonable compensation for the services rendered . . . the commission shall order and hold a public hearing, giving notice to the public and to the utility company, and shall thereafter determine just and reasonable rates to be thereafter charged . . ."

The above-quoted language must of course, be considered in pari materia with the provisions of §§366.05(1) and 366.06(2), Florida Statutes, which set out this commission's powers and jurisdiction. These requirements have been met by the utility and the motion can now be disposed of on its merits.

### Petitioner's position

It is Peoples' contention that there are four important criteria for the determination of what constitutes fair and reasonable rates, those being rate of return, return on equity, embedded cost of debt, and coverage. The company has analyzed each of the criteria and asserts, based on financial data in the record, that its present rates are confiscatory. It maintains that the perpetuation of these rates poses a grave threat to the company's financial integrity and a certain risk to its ability to continue to provide adequate service to its customers. To demonstrate its present financial condition, Peoples points out that its rate of return for the twelve months ending March 31, 1972 was 5.49% and that it would fall to 5.41% by September 30, 1972. This return, states Peoples, is far below the 6.65% authorized by this commission in 1962, when we last determined a rate of return for the company. Its return on equity has likewise fallen considerably below the 11.32% authorized by us in 1962. For the year ending March 31, 1972, its return was only 5.16%, and was 5.01%, by company figures, as of September 30, 1972. The company also notes that its interest coverage has declined from 4.58 times at the end of 1969 to 2.35 times for the year ending March 31, 1972. Finally, the company stresses that its embedded cost of debt, while only 4.85% in 1962, has steadily risen to a current level of 6.51%, which is more than a full percentage point

over its overall rate of return. All of these factors, when coupled together, clearly demonstrate, according to petitioner, that its financial integrity is in jeopardy and that interim rate relief must be granted.

### Intervener's position

As we have previously stated, various customers have intervened in opposition to the rate increase, and each has expressed in its request to formally intervene an expression of opposition to the emergency interim rate increase. Only Thatcher Glass Company has, however, fully participated in the hearings and filing of briefs on this matter.

Basically, it is Thatcher's position that Peoples has not presented clear and convincing evidence that such relief is required, that its true financial condition reflects only a slight reduction in operating income during the test period, that petitioner itself was dilatory in seeking rate relief, that although other gas utilities in the state have higher rates of return, these were established after full hearings, and that the interveners herein have a right to be heard through the presentation of evidence prior to any determination on the matter. In sum, intervener argues that no emergency exists and that the petitioner has presented an ordinary case not unlike that of any other utility case handled through the usual rate making procedure.

### The merits of the motion

In our most recent decision involving a request for emergency interim rate relief, we summarized the general criteria that we have utilized in treating requests of this nature in the following manner—

> "We have in the past authorized interim increases where it appeared to us that the financial integrity of the utility was in jeopardy, or a delay in the authorizing of increased rates would result in undue hardship to it."
>
> [Re: Petition of Florida Power Corporation, Docket No. 71370-EU (1972)]

Interim rate relief has a connotation, in our opinion, of an emergency financial condition which necessitates the imposition of interim rates after the clear and convincing demonstration of such an emergency by the utility. The primary consideration, in our judgment, is whether or not the financial integrity of a utility is in jeopardy. No one seriously questions the fact that a utility must, in order to assure its financial integrity and meet its obligations to the public, have a return on its investment sufficiently high to attract additional capital and maintain its credit standing. In the landmark decision of Federal Power Commission v. Hope Natural

Gas Co., 320 U.S. 591 (1944), the United States Supreme Court stated this principle as follows —

"That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and attract capital." (320 U.S. 591 at 603)

The obvious question, and a difficult one at best, is whether an actual emegency exists which would justify, and in fact require, the imposition of interim rates at this time. After carefully considering the record before us, we are not prepared to find that the financial integrity of Peoples is in jeopardy or that a delay at this time would result in undue hardship to the company.

In analyzing the financial data presented by the company, we have looked at several factors, none of which can be considered more important than the others, or inclusive of all conditions or criteria which we may consider in requests of this nature. Our general criteria, as stated in Docket No. 71370-EU, are, of course, the polestars which guide us in the decision- making process. However, we have in this proceeding examined the record to determine, inter alia, whether the company has shown an inability to arrange debt financing at reasonable rates without increased revenues, whether the company has experienced a distinctive and sudden decline in revenues, whether the denial of interim rate relief would cause unreasonable and harmful loss of revenues to the company, whether the denial of interim rate relief would cause irreparable harm to the company, whether the company faces immediate difficulty in maintaining its plant or operations, and whether its present rate of return is confiscatory of the company's property. It is our opinion, after considering the foregoing criteria, and others, in the light of the record, that the company has not demonstrated by clear and convincing evidence a satisfactory showing of an emergency situation. Therefore, its motion for emergency increase under bond should be denied.

It is therefore ordered that each of the specific findings set forth in this order be and the same are hereby approved in every respect.

It is further ordered that the motion for emergency increase under bond filed by Peoples Gas System, Inc. be and the same is hereby denied.

By order of Chairman WILLIAM H. BEVIS, Commissioner WILLIAM T. MAYO, and Commissioner JESS YARBOROUGH, as and constituting the Florida Public Service Commission, this 11th day of December, 1972.

*William B. DeMilly*
Administrative Secretary