568 So.2d 120 (1990)
STATE of Florida, Appellant,
v.
Anthony K. CARRS, Appellee.
No. 89-2047.
District Court of Appeal of Florida, Fifth District.
October 18, 1990.
Robert A. Butterworth, Atty. Gen., Tallahassee and David S. Morgan, Asst. Atty. Gen., Daytona Beach, for appellant.
James P. Gibson, Public Defender and Kenneth Witts, Asst. Public Defender, Daytona Beach, for appellee.
HARRIS, Judge.
The State appeals an order suppressing evidence. The trial court found the initial stop was not based on a founded or reasonable suspicion that a crime had been or was about to be committed. We disagree and reverse.
Officer Simpson of the Melbourne Police Department cited Anthony Carrs for driving a vehicle with an expired driver's license. A short time thereafter (two days to a week) he again observed Carrs driving a vehicle. The officer had known Carrs "all his life." Suspecting Carrs had not obtained his new license within that short period, Officer Simpson again stopped him and asked to see his license. Once the violation was verified and a citation was being written, Carrs attempted to dispose of a small container by dropping it on the ground. Rock cocaine was discovered in the container.
Although the order suppressing evidence cites only Foley v. State, 38 Fla. Supp.2d 1 (12th Cir.1989) as authority, based on the testimony offered at the suppression hearing, the court must have concluded that since it was possible for Carrs to have obtained his new license before the second stop, the officer lacked reasonable suspicion for the stop.
The United States Supreme Court held in Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) that it is a violation of the Fourth Amendment for an officer to stop an automobile for a license check "when there is no articulable and reasonable suspicion that a motorist is unlicensed." The reason for imposing this standard of reasonableness, the court indicates, is "to safeguard the privacy and security of individuals against arbitrary invasions."
In the case at bar, Officer Simpson, who had known Carrs "all his life" and saw him "all the time," knew that a short time earlier Carrs was driving with an expired license. He suspected after such a short *121 interval that when he saw Carrs again behind the wheel of a car, he was violating the law. While he had no absolute knowledge that Carrs had not immediately applied for and obtained a new license, his action in stopping Carrs to see if he had was not arbitrary. His suspicion, based on his familiarity with Carrs, was reasonable.
This court has stated that the appropriate standard to apply to Officer Simpson's conduct is:
The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same  and so are law enforcement officers.
State v. Johnson, 516 So.2d 1015, 1019 (Fla. 5th DCA 1987), approved, 561 So.2d 1139 (Fla. 1990).
In Prouse, the Supreme Court in weighing the effect of the intrusion on the individual's Fourth Amendment interests against the State's legitimate governmental interest, considered whether the discretionary spot check "is a sufficiently productive mechanism to justify the intrusion." The court pointed out:
It seems common sense that the percentage of all drivers without a license is very small and that the number of licensed drivers who will be stopped in order to find one unlicensed operator will be large indeed. The contribution to highway safety made by discretionary stops selected from among drivers generally will therefore be marginal at best.
Prouse, 440 U.S. at 659-60, 99 S.Ct. at 1399.
This observation is inapplicable to the present case. This was not a stop of "all drivers" but a stop of a man who had only a short time earlier shown a willingness to drive without a license. It would seem to be "common sense" that highway safety would be increased by verifying that the known unlicensed has become licensed.
A similar case was before the Supreme Court of Minnesota in State v. Duesterhoeft, 311 N.W.2d 866 (Minn. 1981). There the officer stopped an individual based on month-old information that his driver's license was under suspension. Because of computer problems the officer was unable to make an updated search. The court observed:
The stop was not the product of whim or caprice or desire on the part of the officer to harass defendant. Rather the officer believed that defendant's license was still under revocation and he reasonably suspected that defendant was the person driving the truck. The officer clearly did not have probable cause but we believe he did have reasonable suspicion based on the earlier license check. It would have been better if the officer had been able to recheck before making the stop, but the computer was apparently broken. Under the circumstances and bearing in mind that we are not dealing with an arrest or a search, only a stop, we conclude that the officer's actions did not violate the Fourth Amendment.
It is true that Officer Simpson did not run a computer check before the stop. It would have been better had he done so, although there is no indication in the record to show how long it takes for a reissuance of a license to make the computer files. We hold that the failure to make the computer check under the facts of this case does not render the stop constitutionally defective.
REVERSED and REMANDED for further proceedings.
PETERSON and GRIFFIN, JJ., concur.