599 So.2d 691 (1992)
The STATE of Florida, Petitioner,
v.
Wilfredo LEYVA, Respondent.
No. 91-234.
District Court of Appeal of Florida, Third District.
May 12, 1992.
*692 Robert A. Butterworth, Atty. Gen., and Anita J. Gay, Asst. Atty. Gen., for petitioner.
Bennett H. Brummer, Public Defender, and Louis Campbell, Asst. Public Defender, for respondent.
Before HUBBART, COPE and GERSTEN, JJ.
COPE, Judge.
The State petitions for a writ of certiorari to review a final order of the circuit court, acting in its review capacity. The court affirmed an order of the county court granting Wilfredo Leyva's motion to suppress. We grant the petition.
Defendant was arrested for driving with a suspended driver's license. At the hearing on defendant's motion to suppress evidence, a police officer testified he saw defendant get into his vehicle and drive away. The officer further testified:
A ... I had occasion to stop Mr. Leyva before and had personal knowledge of numerous suspensions on his driver's license.
Q When was the last time that you had knowledge that Mr. Leyva's license was suspended?
A I have to say approximately four to five weeks previous to the stop.
Q In the period of four to five weeks, you did not know whether his license had been reinstated?
A No, I did not.
Q And you proceeded to stop him?
A I had followed Mr. Leyva northbound on Ludlam Drive clocking his speed, which was excessive, and I stopped him at Crane Avenue and Ludlam Drive.
Q In your experience as a police officer for six years, do you usually issue citations for infractions?
A I have in the past, yes.
Q You did not issue Mr. Leyva a citation for speeding in this case?
A That's correct.
Q Once you stopped him, what did you do?
A I asked him if he got his driver's license cleared up from the last encounter, and he indicated he had not.
I then performed a records check on his driver's license number and determined it was still suspended.
* * * * * *
Q At some point in time, did you learn that this defendant was habitualized?
A Yes... . Well, the previous time he was habitualized, and again, it was reconfirmed on the second stop.[[1]]
Defendant argued two main points in his motion to suppress, first, that the officer's knowledge of defendant's license suspension was stale, and second, that stopping defendant for speeding was pretextual. The county court granted the motion to suppress and the circuit court, sitting in its review capacity, affirmed without opinion. We conclude that the ruling below departed *693 from the essential requirements of law, see Combs v. State, 436 So.2d 93 (Fla. 1983), and hold that the motion to suppress should have been denied.
The officer's knowledge of defendant's previously suspended driver's license was not stale and provided the officer with a reasonable suspicion upon which to make a valid legal stop. The officer stated he had personal knowledge that defendant's driver's license had been suspended numerous times. This information gave the officer a reasonable suspicion, if not probable cause,[2] to believe that defendant's license was still suspended. See State v. Carrs, 568 So.2d 120 (Fla. 5th DCA 1990); State v. Gibson, 665 P.2d 1302 (Utah), cert. denied, 464 U.S. 894, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983); State v. Duesterhoeft, 311 N.W.2d 866 (Minn. 1981).
In Carrs, the officer stopped the defendant and learned that his driver's license was suspended. A week later, the officer saw defendant driving and stopped him, suspecting that the defendant was "again behind the wheel of a car ... violating the law." Carrs, 568 So.2d at 120. The court held that "[w]hile [the officer] had no absolute knowledge that Carrs had not immediately applied for and obtained a new license, his action in stopping Carrs to see if he had was not arbitrary. His suspicion, based on his familiarity with Carrs, was reasonable." Id. at 121.
The Carrs court cited a Minnesota supreme court case, State v. Duesterhoeft, 311 N.W.2d 866 (Minn. 1981), which upheld a traffic stop where the officer had monthold knowledge that the defendant's driver's license was suspended. The court reasoned that "[t]he stop was not the product of whim or caprice or desire on the part of the officer to harass defendant. Rather the officer believed that defendant's license was still under revocation... ." Id. at 868.
In this case, the officer had four-to-five-week-old knowledge that defendant's driver's license was suspended. The officer had, at a minimum, a reasonable suspicion that defendant was driving with a suspended license.[3] The stop was based on "at least [an] articulable and reasonable suspicion that a motorist is unlicensed[,]" Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979), and therefore the stop and detention to check the license were reasonable under the fourth amendment. See id.[4] In view of that determination, we need not consider the pretextual stop issue.[5]
Finally, we note that a motion to suppress is functionally distinct from a motion to dismiss. See Fla.R.Crim.P. 3.190(b), (h), (i). A motion to suppress is designed to exclude evidence obtained in an unlawful search, id. 3.190(h), or a confession or admission illegally obtained. Id. 3.190(i). A motion to suppress must specify the evidence sought to be suppressed, id. 3.190(h); State v. Jackson, 513 So.2d 797 (Fla. 4th DCA 1987); and a motion to suppress a confession or admission must likewise be made with particularity. Granting of the *694 motion results in exclusion of specified evidence but does not result in dismissal of the case unless both parties stipulate that the motion is dispositive.
In the present case the motion did not specify the evidence sought to be suppressed. It appears that the only matter subject to suppression was the defendant's admission that his license had not been reinstated. Even if the motion to suppress had been well taken, the officer's own prestop observation of the defendant driving the car was not subject to suppression.[6] Similarly, the public record reflecting that defendant's license was still suspended was not a product of the stop and not subject to suppression.[7]
We therefore grant the petition for writ of certiorari, quash the order under review, and remand with instructions to reverse the county court's order granting the motion to suppress.
NOTES
[1] Section 322.27(5), Florida Statutes (1989), states: "The department shall revoke the license of any person designated a habitual offender, as set forth in s. 322.264, and such person shall not be eligible to be relicensed for a minimum of 5 years from the date of revocation, except as provided for in s. 322.271."
[2] Probable cause exists where the officer has "knowledge of facts and circumstances which would warrant an individual of reasonable caution in believing that an offense had been committed." Cross v. State, 432 So.2d 780, 782 (Fla. 3d DCA 1983). "[T]he facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which a conviction must be based." Id.; see also State v. Riehl, 504 So.2d 798, 800 (Fla. 2d DCA), review denied, 513 So.2d 1063 (Fla. 1987).
[3] That is especially so where, as here, a five-year suspension was involved.
[4] The trial court relied on Foley v. State, 38 Fla. Supp. 1 (Fla. 12 Cir.Ct. 1989). For the reasons already stated, we conclude that the officer's information was not stale and reject Foley's holding to the contrary.
[5] We have serious doubt about the county court's application of the pretextual stop doctrine to the stop for speeding in this case. Under Kehoe v. State, 521 So.2d 1094, 1097 (Fla. 1988), the question in a pretextual stop case is whether "under the facts and circumstances a reasonable officer would have stopped the vehicle absent an additional invalid purpose." Id.; see also Hansbrough v. State, 509 So.2d 1081, 1084 (Fla. 1987). Unlike the bent license tag in Kehoe, the speeding laws are routinely enforced. We need not consider the matter any further because even if the real purpose was to determine if defendant's license was still suspended, that was a valid, not invalid, purpose.
[6] In this case the officer already knew the defendant and recognized him. Where that is not so, the identity of a defendant is not subject to suppression, even if the identity was learned as a result of an unlawful arrest. Immigration and Naturalization Service v. Lopez-Mendoza, 468 U.S. 1032, 1039, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778, 786 (1984); see also State v. Ramos, 598 So.2d 267 (Fla. 3d DCA May 12, 1992).
[7] Under settled doctrine, the arrest of a defendant is not subject to suppression nor a charge to dismissal, on the ground that the arrest was illegal. State v. E.T., 560 So.2d 1282, 1284-85 (Fla. 3d DCA 1990); see Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); State v. Ramos, 598 So.2d 267 (Fla. 3d DCA 1992); see also W. LaFave, Searches & Seizures § 1.9(b) (2d ed. 1987).