

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–15–729

|  |  |
|---|---|
| CARROLL ANTHONY MEDLOCK<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** May 25, 2016<br><br>APPEAL FROM THE GRANT COUNTY CIRCUIT COURT<br>[NO. CR–2014-52-2]<br><br>HONORABLE EDDY R. EASLEY, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Carroll Medlock appeals his convictions for possession of methamphetamine with intent to deliver and possession of drug paraphernalia. He argues that the circuit court erred in denying his motions for directed verdict and in denying his motion to suppress evidence found in his vehicle. We affirm.

On 4 June 2014, the Grant County Sheriff's Office executed a search warrant on a residence located on 17 Grant 167076, a county road. Deputy Sam Shepard, who was tasked with securing the perimeter of the residence, was positioned at the edge of the driveway near the road. Shortly after 10:00 p.m., Medlock turned onto the road in route to a different residence and stopped his vehicle. Shepard recognized Medlock and knew that Medlock's driver's license was suspended, so Shepard instructed Medlock to pull over and get out of the vehicle. Medlock was placed into custody on a charge of driving on a suspended license and displaying fictitious tags, and Shepard, knowing the vehicle would

be towed, began an inventory search of the vehicle. Shepard found what he believed to be methamphetamine in a cigarette pack in the front seat and later found what appeared to be drug paraphernalia.

Medlock was charged with possession of a Schedule I controlled substance (methamphetamine) with intent to deliver; possession of drug paraphernalia with the intent to use, ingest, or inhale; and driving on a suspended license. An amended information filed in May 2015 omitted the charge of driving on a suspended license but added a habitual-offender sentencing enhancement and an additional charge of posession of drug paraphernalia with the purpose to manufacture a controlled substance.

On 23 September 2014, Medlock filed a motion to suppress all evidence obtained during the stop and the search of his vehicle. He argued that his detention violated Rule 3.1 of the Arkansas Rules of Criminal Procedure because Deputy Shepard could not have reasonably believed that he (Medlock) was doing anything illegal when he (Shepard) approached and detained Medlock. He also asserted that the stop violated Rule 2.2 because Shepard was not investigating any particular crime when he made contact with Medlock. Medlock contended that he was seized, that the seizure was unconstitutional, and that the search of his vehicle was a "pretextual" inventory search.

The circuit court conducted a suppression hearing in November 2014. Deputy Shepard testified that on June 4, he was securing the perimeter of a residence while a search warrant was being executed and saw a vehicle turn off the highway and onto the road in front of the residence. Shepard explained that while there were patrol cars parked along the road, the road was not blocked, but that the vehicle came to a stop in front of

the residence. Shepard recognized the driver as Medlock and knew that Medlock's driver's license was suspended at that time. Shepard asked Medlock to pull the vehicle out of the road and into the driveway, asked him to get out of the vehicle, and asked him why he was driving. Medlock explained that he "was going to see someone" and that he had a work permit. Shepard asked another officer, Deputy Jackie Stone, to place Medlock into custody and put him in the back of Shepard's patrol car. Shepard also confirmed through dispatch that Medlock's license was suspended and that he had fictitious tags on his vehicle.

Shepard explained that Medlock's vehicle was going to be towed, so Shepard began an inventory search of the vehicle. Shepard found a cigarette pack in the front passenger seat, and because in his experience many people keep money or their identification stuffed inside cigarette packs, he looked inside the cigarette pack and found what appeared to be a small amount of methamphetamine wrapped in cellophane. He also found a torch between the passenger seat and the center console and a black case that held a glass pipe and a small tin containing methamphetamine and a small spoon between the driver's seat and the center console.

Medlock testified that on the night of June 4, he was going by a friend's house to check on her dogs and to return a tow bar. He stated that when he turned onto her road, the road was completely blocked by law enforcement vehicles. According to Medlock, the first thing he saw was an AR-15 held by Deputy Shepard, and Shepard had his weapon "aimed toward the windshield of the car as he walked around to the shoulder of it." Shepard approached the passenger side of Medlock's car and told him to pull over to

the shoulder. Medlock explained that he was handcuffed almost immediately after exiting the vehicle and that Shepard began searching the vehicle. Medlock said that he had just repossessed the car and that the title was sitting on top of the console. He denied knowing that there were any drugs in the car and said that he had not driven the car in over three weeks. He admitted that his driver's license was suspended but stated that he had a work permit and that he considered returning his friend's tow bar a part of his work.

Deputy Shepard was recalled and testified that he did not point his weapon at Medlock at any time that night.

During closing arguments, the State argued that Shepard's initial contact with Medlock was valid because Shepard had a reasonable suspicion that Medlock was driving on a suspended driver's license. And once Shepard found methamphetamine in the cigarette pack, he had probable cause to search the rest of the vehicle. Medlock argued that Shepard did not have a reasonable suspicion that Medlock's license was still suspended and that the search of the vehicle incident to his arrest was not reasonable. Medlock asserted that the vehicle search was "clearly not an inventory search, it was a pretextual search for contraband."

In an order entered on 25 November 2014, the circuit court denied Medlock's motion to suppress. The court found that Deputy Shepard had reasonable cause to arrest Medlock and that the search of Medlock's vehicle was not unreasonable under the circumstances.

The case proceeded to a jury trial in May 2015. Deputy Shepard reiterated his testimony from the suppression hearing; Deputy Jackie Stone testified and confirmed that

he had placed Medlock in custody at the behest of Deputy Shepard. Stone also testified that he found "quite a bit" of money on Medlock's person. Agent Matt Smith, a member of the Narcotics Enforcement Unit, testified that he saw the items taken from Medlock's vehicle and the cash that was on Medlock's person, which included "several 20's, maybe a couple of 100's." He later stated that it was "around $500."[1] Nick Dawson, a chemist with the State Crime Lab, confirmed that the white substance in the cellophane package and in the small tin was methamphetamine and that the glass pipe contained methamphetamine residue. He explained that the small tin contained 7.0245 grams of methamphetamine and the cellophane package in the cigarette pack contained 0.1023 grams of methamphetamine.

At the close of the State's case, Medlock moved for a directed verdict on the charge of possession of methamphetamine with intent to deliver. He argued that

> the State had failed to produce sufficient evidence . . . that [he] was in either actual possession of methamphetamine or constructive possession of methamphetamine. The State has failed to show that Mr. Medlock knew what the substance was in the car or even knew what [sic] the substance was in the car. As to the purpose to deliver, that requires control and intent and there's been neither in the possession with the purpose to deliver methamphetamine.

As to both charges of possession of drug paraphernalia, he asserted that there was "no evidence from which a reasonable jury could conclude that [he] had direct physical control over any of the drug paraphernalia or that he even had constructive possession." Medlock's motion was denied.

---

[1] State's Exhibit 2 showed that $501 was found on Medlock's person: two $100 bills, fourteen $20 bills, one $10 bill, and eleven $1 bills.

The defense presented the testimony of Crystal Forrest, who verified that Medlock was on his way to her house to check on her dogs on the night in question, and Gerald Harp, a friend of Medlock's, who testified that Medlock had not driven his vehicle in over two weeks prior to the night in question and that the car had been driven by several other people. The defense rested, and Medlock's directed-verdict motions were renewed and denied. A jury found Medlock guilty on all charges, and he was sentenced to an aggregate term of eighty years' imprisonment. Medlock has now appealed.

## I. *Sufficiency of the Evidence*

For his first point on appeal, Medlock argues that the circuit court erred in denying his motions for directed verdict on the charges of possession of methamphetamine with intent to deliver and possession of drug paraphernalia. This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *See Tubbs v. State*, 370 Ark. 47, 257 S.W.3d 47 (2007). In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*



A. Possession with Intent to Deliver

Arkansas Code Annotated section 5-64-420 (Supp. 2015) provides as follows:

(a) Except as provided by this chapter, it is unlawful if a person possesses methamphetamine or cocaine with the purpose to deliver the methamphetamine or cocaine. Purpose to deliver may be shown by any of the following factors:
(1) The person possesses the means to weigh, separate, or package methamphetamine or cocaine;
(2) The person possesses a record indicating a drug-related transaction;
(3) The methamphetamine or cocaine is separated and packaged in a manner to facilitate delivery;
(4) The person possesses a firearm that is in the immediate physical control of the person at the time of the possession of methamphetamine or cocaine;
(5) The person possesses at least two (2) other controlled substances in any amount; or
(6) Other relevant and admissible evidence that contributes to the proof that a person's purpose was to deliver methamphetamine or cocaine.

It is not necessary that the State prove literal physical possession of contraband. *See Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000). Contraband is deemed to be constructively possessed if the location of the contraband was under the dominion and control of the accused. *See Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998). Constructive possession exists where joint occupancy of the premises occurs and where there are additional factors linking the accused to the contraband. *See Embry v. State*, 302 Ark. 608, 792 S.W.2d 318 (1990). Those additional factors include (a) whether the accused exercised care, control, and management over the contraband; and (b) whether the accused knew the material was contraband. *See id.*; *see also Crossley v. State*, 304 Ark. 378, 802 S.W.2d 459 (1991). This control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in

plain view, and the ownership of the property where the contraband is found. *See Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988).

Medlock argues that the State failed to show that he knew there was an illegal substance in the car, citing his own testimony at the suppression hearing that he had just repossessed the car and Harp's testimony at trial that Medlock had not driven the car in over two weeks.[2] He also argues that the State failed to present any evidence that he possessed the means to weigh, separate, or package methamphetamine.

In response, the State contends that possession was sufficiently proven given that Medlock was the only person in the vehicle when he was arrested and both the methamphetamine and the drug paraphernalia were within his immediate reach. The State also asserts that the separate packages of methamphetamine, one containing over seven grams and a smaller one containing less than a gram; the small spoon found with the larger package of methamphetamine; and the cash found on Medlock are sufficient to show the purpose to deliver based on the factors in Ark. Code Ann. § 5-64-420.

We agree with the State that substantial evidence supports Medlock's conviction for possession with intent to deliver. Because we affirm on this point, we need not address Medlock's sufficiency argument as to the lesser-included offense of simple possession.

---

[2] Any evidence presented at the suppression hearing is irrelevant to Medlock's sufficiency argument because that evidence was not presented to the jury.



B. Possession of Drug Paraphernalia

Medlock argues that the State failed to present substantial evidence that he exercised actual or constructive possession over any drug paraphernalia or that he even knew that contraband was in the vehicle. But the same evidence of constructive possession that supports Medlock's conviction for possession with intent to deliver also supports his conviction for possession of drug paraphernalia. He was the only person in the vehicle, and the glass pipe with methamphetamine residue was found within his immediate reach. We therefore affirm his conviction for possession of drug paraphernalia.

II. *Motion to Suppress*

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Lee v. State*, 2009 Ark. 255, 308 S.W.3d 596. We defer to the superiority of the circuit court to evaluate the credibility of witnesses who testify at a suppression hearing. *See Montgomery v. State*, 367 Ark. 485, 241 S.W.3d 753 (2006).

Here, Medlock argues that the evidence used against him was obtained in violation of Rules 3.1 and 2.2 of the Arkansas Rules of Criminal Procedure. He first asserts that the evidence was obtained in violation of Rule 3.1 because Deputy Shepard did not have a

reasonable suspicion that Medlock was involved in criminal activity. Rule 3.1 provides as follows:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

Ark. R. Crim. P. 3.1 (2015). "Reasonable suspicion" is defined as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R. Crim. P. 2.1. Whether an investigative stop is justified depends on whether, under the totality of the circumstances, the police have a specific, particularized, and articulable reason indicating that the person may be involved in criminal activity. *Davis*, *supra*. In addition, the Arkansas legislature has codified factors to be considered when determining whether an officer has grounds to "reasonably suspect" a person is subject to detention pursuant to Rule 3.1. These factors include, but are not limited to, the following:

> (1) The demeanor of the suspect;
> (2) The gait and manner of the suspect;
> (3) Any knowledge the officer may have of the suspect's background or character;
> (4) Whether the suspect is carrying anything, and what he or she is carrying;
> (5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all of the other factors;
> (6) The time of the day or night the suspect is observed;
> (7) Any overheard conversation of the suspect;
> (8) The particular streets and areas involved;

(9) Any information received from third persons, whether they are known or unknown;

(10) Whether the suspect is consorting with others whose conduct is reasonably suspect;

(11) The suspect's proximity to known criminal conduct;

(12) The incidence of crime in the immediate neighborhood;

(13) The suspect's apparent effort to conceal an article; and

(14) The apparent effort of the suspect to avoid identification or confrontation by a law enforcement officer.

Ark. Code Ann. § 16–81–203 (Repl. 2005).

Medlock contends that the evidence was obtained in violation of Rule 3.1 because Deputy Shepard could not have reasonably suspected, absent speculation and conjecture, that he was committing, had committed, or was about to commit a felony or a misdemeanor that involved danger of forcible injury to persons or of appropriation of or damage to property. He says that, at most, factors (3), (6), and (11) were present, but that the evidence as a whole did not provide a sufficient basis for reasonable suspicion.

Medlock also argues that the evidence in this case was obtained in violation of Ark. R. Crim. P. 2.2:

> (a) A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.
> (b) In making a request pursuant to this rule, no law enforcement officer shall indicate that a person is legally obligated to furnish information or to otherwise cooperate if no such legal obligation exists. Compliance with the request for information or other cooperation hereunder shall not be regarded as involuntary or coerced solely on the ground that such a request was made by a law enforcement officer.

Ark. R. Crim. P. 2.2 (2015). An encounter under Rule 2.2 is permissible only if the information or cooperation sought is to aid an investigation or the prevention of a particular crime. *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998). Because the

11

encounter is in a public place and is consensual, it does not constitute a seizure within the meaning of the Fourth Amendment; but if an officer restrains the liberty of a person by means of physical force or show of authority, the encounter ceases to be consensual and becomes a seizure. *See Thompson v. State*, 303 Ark. 407, 797 S.W.2d 450 (1990).

Medlock argues that, in this case, Deputy Shepard was not investigating or preventing any particular crime when the deputy stopped him and ordered him to pull over and exit his vehicle. He also alleges that the search of his vehicle after his arrest for driving on a suspended license was a "pre-textual investigatory search"; that Shepard was on a "fishing expedition for contraband"; and that Shepard failed to fully comply with the Grant County Sheriff Department's written policy on towing vehicles and inventory searches, which demonstrates his "absence of good faith and unreasonable law enforcement conduct." So any evidence that flowed from the illegal search of his vehicle should be suppressed as fruit of the poisonous tree. The State responds that the initial contact between Deputy Shepard and Medlock was valid and notes that Medlock willingly stopped his vehicle in front of the residence that was being searched. The State also argues that Shepard conducted a good-faith inventory search after Medlock had been arrested, which revealed the presence of methamphetamine and drug paraphernalia.

We hold that Deputy Shepard's initial encounter with Medlock was lawful pursuant to Rule 2.2. The circuit court found that Medlock stopped his vehicle on the county road and that, once the vehicle had stopped, Shepard recognized Medlock and knew that his driver's license had been suspended. Shepard's request that Medlock pull his car over and exit the vehicle was made in the investigation of a particular crime, albeit a

relatively minor one: driving on a suspended license. The circuit court also found that after Medlock had been arrested, Shepard began a lawful inventory search of Medlock's vehicle pursuant to the written policy of the Grant County Sheriff's Department, and that early into the inventory search, Shepard found what he believed to be methamphetamine. This discovery provided probable cause for Medlock's arrest on felony drug charges and the continued search of the vehicle for any other drugs or drug paraphernalia. We therefore hold that the circuit court did not err in denying Medlock's motion to suppress.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.

*Philip C Wilson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson*, Ass't Att'y Gen., for appellee.