
# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CR–16–825

| | |
|---|---|
| CHRISTOPHER SHAWN WILLIAMS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **OPINION DELIVERED:** MAY 10, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION<br>[NO. 60CR-14-3894]<br><br>HONORABLE LEON JOHNSON, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Christopher Shawn Williams appeals his bench trial conviction on charges of possession of methamphetamine with purpose to deliver, a Class B felony, and possession of drug paraphernalia, a Class B felony. He argues that the trial court's denial of his motion to suppress all physical evidence that was obtained, pursuant to what appellant claimed was an illegal search and seizure of his person, was clearly erroneous. We affirm.

### I. *Facts*

Appellant was charged by felony information with a single count of possession of methamphetamine with purpose to deliver, a Class B felony, possession of drug paraphernalia (scales), a Class B felony, a count of Class D felony possession of drug paraphernalia (pipe), and an unclassified misdemeanor of driving on a suspended driver's license. Appellant waived a jury trial and subsequently filed a motion to suppress physical evidence on April 16, 2015, asserting an illegal search and seizure of his person in violation

of the Fourth Amendment to the U.S. Constitution, article 2, section 15 of the Arkansas Constitution, and state statutes regarding searches and seizures.

The April 25, 2016 bench trial began with a hearing on appellant's motion to suppress. Following testimony and arguments of counsel, the trial court denied the motion. The bench trial included testimony from three State witnesses: Tony Ball and Tina McMillan, sheriff's deputies at the time of the stop and arrest of appellant, and Kim Brown, a drug chemist at the Arkansas State Crime Laboratory. Deputy Ball testified that he saw appellant driving a vehicle, and he conducted a traffic stop based on his belief that appellant's driver's license had been suspended. After the stop, Deputy Ball confirmed the suspended license and advised appellant that an inventory search was going to be conducted. Deputy Ball testified that appellant consented to a search of the vehicle. The search resulted in the confiscation of suspected contraband, and appellant was taken into custody.

Deputy McMillan responded to the location of appellant's stopped vehicle. She described searching the vehicle and finding a suspicious object wrapped in black electrical tape. Following a K-9 alert, Deputy McMillan took a closer look at the taped object and noticed a plastic baggie with a white crystalline substance inside. She also described looking in a backpack and finding a pipe and scales.

The final witness for the State was Ms. Brown, who was qualified as an expert in drug analysis. Ms. Brown identified State's exhibit 2 as an item she had tested and found to be methamphetamine in excess of four grams.

At the conclusion of the State's case-in-chief, appellant moved for a directed verdict on each count, individually. The trial court denied the motions. Appellant chose not to

SLIP OPINION

testify, and counsel renewed the previous motions, including the motion to suppress the evidence. The trial court denied those motions and announced that appellant was guilty on Counts I and II—possession of methamphetamine with purpose to deliver, a Class B felony, possession of drug paraphernalia (scales), a Class B felony, respectively—but that Counts III and IV were dismissed.

A sentencing hearing was conducted on May 26, 2016, at which time appellant was sentenced to four years of probation, fines, fees and court costs, drug treatment, and a driver's-license suspension. That sentencing order was entered on June 2, 2016. Appellant filed a timely notice of appeal on June 20, 2016.

## II. *Standard of Review*

When reviewing a trial court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the trial court. *Bathrick v. State*, 2016 Ark. App. 444, 504 S.W.3d 639. We defer to the trial court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. *Id*. A finding is clearly erroneous when the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id*. This court defers to the superiority of the trial court to evaluate the credibility of witnesses who testify at a suppression hearing. *Medlock v. State*, 2016 Ark. App. 282, 493 S.W.3d 789.

SLIP OPINION

SLIP OPINION

### III.  *Discussion*

After testimony was taken and arguments of counsel were made on the suppression motion, the trial court ruled that after "looking at the law and the evidence presented, the policy, the reports and all of that, [the] motion to suppress will be denied." The testimony by Deputy Ball, the sheriff's deputy who conducted the traffic stop, includes the following statements on direct examination: "I had prior knowledge of Mr. Williams . . . I knew his vehicle and that he was on a suspended driver's license . . . I observed his truck and that he was driving. I had prior knowledge of [appellant's] suspended driver's license so I eased up behind him to initiate a traffic stop." He explained that appellant pulled into his driveway and stopped. "They contacted and advised [me] that the driver's license was suspended . . . When I confirmed that his driver's license was suspended, I told him we were going to inventory his vehicle or that the vehicle was going to be towed to do an inventory search." On cross-examination, Deputy Ball testified:

> I knew [appellant] prior to the stop. I saw him pass by me. When I saw him driving the car, I thought he had a suspended driver's license. I had stopped him, I'm not sure, two weeks or a month prior maybe. . . . I don't recall when that prior stop occurred. I don't know the date his driver's license was suspended. I have no idea the date the suspension would have lasted through. But I did stop him before I called in to find out and verify whether his driver's license was suspended . . . After I stopped him and we were standing in the driveway, an ACIC check was conducted on Mr. Williams to make sure he didn't have any outstanding warrants or anything and it was verified that he had a suspended driver's license.

Appellant's counsel's argument at the conclusion of testimony regarding the suppression motion included that

> [Deputy Ball] did not have reasonable suspicion to stop and detain my client. He did not know the date of the suspension when he had previously stopped Mr. Williams. He didn't even remember the date that he had stopped Mr. Williams or how much time had passed from the earlier stop until the one [at issue here.] He

suspected he had a suspended driver's license, but it was not reasonable because he didn't know the date that suspension occurred or when that suspension was supposed to end.

The State countered that there was probable cause in this case because Deputy Ball had personal knowledge of appellant. The State reiterated Deputy Ball's testimony that recently before this encounter he knew that appellant's license had been suspended. At that point, he made valid contact with appellant and then confirmed that his license was, indeed, still suspended.

In order for a police officer to make a traffic stop, he must have probable cause to believe that a traffic law has been violated. *Lockhart v. State*, 2017 Ark. 13, 508 S.W.3d 869. Probable cause is defined as facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. *Id.* In assessing the existence of probable cause, our review is liberal rather than strict. *Id.* Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation that the officer believed to have occurred. *Id.*

Driving on a suspended license is an unclassified misdemeanor offense. Ark. Code Ann. § 27-16-303 (Repl. 2014). Appellant submits that, had Deputy Ball confirmed the suspension of appellant's license before initiating the traffic stop, he would have had probable cause for the stop. However, the mere fact that he had, some two to four weeks earlier, known that appellant's license was at that time suspended, would not cause a person with reasonable caution to believe the license was still suspended. Appellant urges that Deputy Ball did not know the circumstances of the suspension because, theoretically, appellant could

have gone to driver control the next business day after his previous ticket and cured the suspension.

Deputy Ball admitted seeing appellant driving, thinking his license might still be suspended, stopping appellant, and only then checking the status of appellant's driver's license. While acknowledging that several extenuating circumstances led to the search of appellant's vehicle and the confiscation of the physical evidence he sought to have suppressed, appellant submits that had the illegal traffic stop not occurred, the resulting search of the vehicle would also likely not have occurred. He argues that the violation of his right to be free from an unlawful seizure calls for suppression of the evidence and requests that his case be reversed and remanded to the trial court with a holding that the physical evidence obtained after the illegal traffic stop be suppressed.

We disagree and hold that the trial court did not err by denying appellant's motion to suppress. Arkansas Rule of Criminal Procedure 4.1(a)(iii) (2016) permits a warrantless arrest if an officer has reasonable cause to believe that a defendant has committed any violation of law in the officer's presence. Additionally, under Arkansas Code Annotated section 5-65-105 (Repl. 2016), it is unlawful to operate a motor vehicle with a suspended license.

Probable cause is defined as "the facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Lockhart*, 2017 Ark. 13, at 5, 508 S.W.3d at 873. The degree of proof sufficient to sustain a finding of probable cause is less than that required to sustain a criminal conviction. *Robinson v. State*, 2014 Ark. 101, 431

SLIP OPINION

S.W.3d 877. When determining whether probable cause existed, the review is liberal rather than strict. *Id.*

The evidence presented to support the conviction was that on August 29, 2014, Deputy Ball saw appellant driving near the intersection of Arch and Pratt Streets in Little Rock. Deputy Ball knew from a prior traffic stop that appellant was driving on a suspended license. Although at the suppression hearing, Deputy Ball could not recall the exact date of the prior stop, he estimated that it was between two weeks and a month prior to the August 29, 2014 stop. When he saw appellant driving again on August 29, 2014, he attempted to initiate a traffic stop by activating his lights and pulling behind appellant. Appellant continued driving approximately a quarter of a mile, passing several businesses at which he could have pulled over. Appellant finally turned into the driveway of his own residence and stopped.

Deputy Ball then exited his vehicle and approached appellant's driver-side window. He asked appellant, who was still sitting in the driver's seat, why he did not stop. Appellant replied that he had not seen Deputy Ball behind him before pulling into his driveway. Deputy Ball then ran appellant's information through ACIC and confirmed that his driver's license remained suspended. Deputy Ball informed appellant that his car was going to be towed and that Deputy Ball was going to conduct an inventory search of it. Deputy Ball also asked for and obtained appellant's consent to search appellant's car. As a result of the search of appellant's car, deputies recovered a green glass pipe, a set of black digital scales, and what was later determined to be 4.0969 grams of methamphetamine.

We hold that Deputy Ball's belief regarding the suspension of appellant's driver's license was reasonable, as it was based on "facts . . . within [his] knowledge." *Robinson*, 2014 Ark. 101, at 5, 431 S.W.3d at 880. And those facts, as detailed above, were "sufficient to permit a person of reasonable caution to believe that an offense [had] been committed." *Id.* Deputy Ball could not recall at the suppression hearing exactly how long before the August 29, 2014 traffic stop that he had knowledge that appellant's license was suspended. But he testified that he knew that it had been between two and four weeks earlier.

A belief that appellant was still committing the traffic violation, and not confirmation of appellant's guilt, is all that was required for Deputy Ball to have probable cause sufficient to initiate a traffic stop. *See Robinson*, *supra*; *Travis v. State*, 331 Ark. 7, 10, 959 S.W.2d 32, 34 (1998); *see also Prickett v. State*, 2016 Ark. App. 551, 506 S.W.3d 870 (where an officer had probable cause to believe that Prickett's license was still suspended on the day of a traffic stop when he had learned it was suspended two weeks prior to the stop and had verified the day before the stop that it was still suspended). In *Boyd v. State*, 758 So. 2d 1032 (Miss. Ct. App. 2000), the Mississippi Court of Appeals held that the determinative factor in these cases is the relative "freshness" or "staleness" of the officer's information. *See State v. Harris*, 513 S.E.2d 1 (Ga. Ct. App. 1999) (arresting officer informed by other officers in his department that the defendant's driver's license had been suspended "in the last few weeks"); *State v. Leyva*, 599 So. 2d 691 (Fla. Dist. Ct. App. 1992) (holding officer's knowledge that driver's license had been suspended four to five weeks prior provided him with a reasonable suspicion upon which to make a valid legal stop); *State v. Duesterhoeft*, 311 N.W.2d 866

(Minn. 1981) (policeman had learned one month earlier that defendant's license was suspended).

The United States Supreme Court held in *Delaware v. Prouse*, 440 U.S. 648 (1979), that the interest of the state in ensuring that only properly licensed drivers are operating motor vehicles on the roadways of the state is a vital interest. Our supreme court has held that the operation of a motor vehicle upon a public road is a privilege and not a right. *See Stevens v. State*, 319 Ark. 640, 893 S.W.2d 773 (1995). Where the interest of the state is great and the intrusion on individual liberty is minimal, a stop to investigate is constitutionally permissible if accompanied by reasonable articulable suspicion that the individual is violating the laws of the state. *See Terry v. Ohio*, 392 U.S. 1 (1968). Accordingly, we hold that Deputy Ball had probable cause to initiate a traffic stop and that the denial of appellant's motion to suppress evidence obtained as a result of the stop was not clearly erroneous.

Affirmed.

GRUBER, C.J., and VAUGHT, J., agree.

*William R. Simpson, Jr.*, Public Defender, and *Sandi Cordi*, Deputy Public Defender, by: *Margaret Egan*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.