

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR–16–881

| | |
|---|---|
| RON ANTWON HARRIS | **Opinion Delivered:** May 31, 2017 |
| APPELLANT | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 01CR–2015–007] |
| V. | |
| STATE OF ARKANSAS | HONORABLE DAVID G. HENRY, JUDGE |
| APPELLEE | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Appellant Ron Antwon Harris was convicted by an Arkansas County jury of one count of second-degree sexual abuse. He was sentenced to serve eight years' imprisonment in the Arkansas Department of Correction. On appeal, he does not challenge the sufficiency of the evidence. Instead, he contends that the circuit court erred in denying his motion to suppress evidence. For the following reasons, we affirm.

Evidence adduced at trial indicated that on December 29, 2014, the victim, B.A., was staying at the home of Angela Alexander when he was awakened by Harris. B.A.'s shorts were pulled down, and he felt a "boy private part moving [in] his behind." The next morning, he told his grandfather what Harris had done to him. B.A.'s mother took him to the hospital in Stuttgart and then to Arkansas Children's Hospital (ACH) in Little Rock. At ACH, the nursing staff obtained swabs and collected the clothes B.A. had been wearing. The Arkansas State Crime Lab would later compare the DNA from sperm cells found inside B.A.'s underwear to

a swab taken from Harris. The sperm cells obtained were determined to be a match to Harris within all scientific certainty.

On December 30, 2014, Haley Kizer, a forensic interviewer for Crimes Against Children, a division of the Arkansas State Police, met and interviewed B.A. BA. told Kizer that Harris had put his penis in B.A.'s buttocks. Kizer contacted Detective Sergeant Eric Brown of the Stuttgart Police Department to inform him of B.A.'s claim.

On January 2, 2015, Officer Mario Lewis received a message from police dispatch that Harris was at a park in Stuttgart and wanted to turn himself in on a warrant. Officer Lewis, along with Officer Cody Eason, went to the park to locate Harris, but when they checked, there were no warrants out for Harris's arrest. Detective Brown, who had been working on the case and looking for Harris, overheard the call from Officer Lewis checking for warrants and asked Officer Lewis to tell Harris that he wanted to speak with him. Officer Lewis relayed Detective Brown's message to Harris, who agreed to go to the police station and give a statement. Officer Lewis testified that he offered to give Harris a ride, and Harris accepted.

At the police station, Detective Brown advised Harris of his *Miranda* rights. Harris then signed an acknowledgement. Detective Brown testified that Harris was not initially forthcoming with his statement, but he eventually agreed to talk to him about the allegations. Harris asked Detective Brown to write the statement for him since Harris could not write well. In the statement, Harris admitted to pulling down B.A.'s pants, fondling his buttocks, rubbing his penis on B.A., and then ejaculating on him. Once the statement was complete, Detective Brown read the statement back to Harris, who agreed with what was written and signed the statement.

2

On February 19, 2016, Harris filed a motion to suppress evidence, contending that the statement he had given at the police station should be suppressed because he had been taken to the police station against his will in violation of Arkansas Rule of Criminal Procedure 2.3.

The circuit court held a suppression hearing on Harris's motion on February 22, 2016. At the hearing, the State argued that transporting Harris to the police station was proper and that Harris went with the police voluntarily. The State also argued that it had probable cause to arrest Harris, which would cure any deficiencies in a Rule 2.3 warning; thus allowing the introduction of Harris's statement. The circuit court held that the officers did not comply with the requirements of Rule 2.3 when Harris was asked to go to the police station for questioning but that there was probable cause for an arrest based on information Detective Brown received from the Department of Human Services and from the victim's family. Accordingly, the circuit court denied Harris's motion to suppress and permitted his statement to be admitted at trial.

On appeal, Harris argues that the circuit court erred by denying his motion to suppress evidence; specifically, he maintains that the court erred because law-enforcement officers failed to properly advise him that he did not need to come to the police station for questioning under Arkansas Rule of Criminal Procedure 2.3 and that the officers did not have probable cause to arrest him.

Arkansas Rule of Criminal Procedure 2.3 provides the following:

> If a law enforcement officer acting pursuant to this rule requests any person to come to or remain at a police station, prosecuting attorney's office or other similar place, he shall take such steps as are reasonable to make clear that there is no legal obligation to comply with such a request.

Ark. R. Crim. P. 2.3

The circuit court found that even though Rule 2.3 was not properly complied with,

3

there was probable cause for the arrest of Harris based on information from the victim's family and, more particularly, from the Department of Human Services. We agree.

When reviewing a trial court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the trial court. *Bathrick v. State*, 2016 Ark. App. 444, 504 S.W.3d 639. Our court defers to the trial court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. *Id.* A finding is clearly erroneous when the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* We defer to the superiority of the trial court to evaluate the credibility of witnesses who testify at a suppression hearing. *Medlock v. State*, 2016 Ark. App. 282, 493 S.W.3d 789.

It is well settled, and Harris acknowledges, that even if a Rule 2.3 warning was not given, a statement need not be suppressed if the officer had probable cause to arrest. *See, e.g.*, *Efurd v. State*, 334 Ark. 596, 976 S.W.2d 928 (1998). If a police officer has probable cause to arrest, failure to give a Rule 2.3 warning is irrelevant. *State v. Bell*, 329 Ark. 422, 430, 948 S.W.2d 557, 561 (1997). Moreover, the suspect need not be under arrest at the time he accompanies officers to the police station for questioning, but merely probable cause must exist that he could be placed under arrest. *Id.*

Probable cause to arrest without a warrant exists when the facts and circumstances within the collective knowledge of the officers and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief

SLIP OPINION

that an offense has been committed by the person to be arrested. *Friar v. State*, 2016 Ark. 245, at 7. Such probable cause does not require the degree of proof to sustain a conviction. *Id.* The test for determining probable cause rests on the collective information of the officers. *Efurd*, *supra*. Officers are permitted to rely on information supplied by a victim of a crime as a basis to support probable cause for arrest of a suspect. *E.g.*, *Humprey v. State*, 327 Ark. 753, 764, 940 S.W.2d 860, 866 (1997). Under these standards, the circuit court did not clearly err in denying Harris's motion to suppress.

At the suppression hearing, Detective Brown testified that information obtained from the victim's family members and the Department of Human Services formed the basis of his desire to speak with Harris.[1] Officer Chris Owens interviewed B.A. at the hospital in Stuttgart and reported his findings to Detective Brown. Detective Brown also had a copy of Kizer's report on the incident, which identified Harris as the suspect. The report contained a summary of Kizer's interview with B.A. in which he stated that Harris had touched B.A.'s buttocks with his penis. We hold that this is sufficient to show probable cause existed, and the circuit court did not clearly err in its finding. Accordingly, we affirm.

Affirmed.

GLADWIN and GLOVER, JJ., agree.

*Laura Avery*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.

---

[1]As noted, this was also the circuit court's basis for finding that probable cause existed. However, the record indicates that Detective Brown received the information identifying Harris from Haley Kizer's report from the Crimes Against Children Division of the Arkansas State Police—not the Department of Human Services. Regardless, we hold that the circuit court was correct in finding that probable cause existed.