David M. Glover, Judge, dissenting.
*894 The majority is correct in finding Corporal Kennedy had reasonable suspicion to search Shay for weapons to ensure Corporal Kennedy's safety. I dissent, however, because we should also affirm the circuit court's denial of Shay's motion to suppress based on Shay's consent to the search.
When reviewing the circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to the inferences drawn by the circuit court.
Williams v. State , 2017 Ark. App. 291, 524 S.W.3d 13. We defer to the superior position of the trial court to evaluate the credibility of witnesses who testify at a suppression hearing. Id. An officer may conduct a search of an individual's person without a search warrant or other color of authority if the individual consents to the search; such consent must be freely and voluntarily given, with no actual or implied duress or coercion, and the State bears the burden of proving such. Ark. R. Crim. P. 11.1 (2017). Valid consent to search must be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. Franklin v. State , 2010 Ark. App. 792, 378 S.W.3d 296.
Corporal Kenneth Kennedy of the Clarksville Police Department was the sole witness at the suppression hearing. The stop/search/arrest event was audio/video recorded. At the hearing, the recording of the event was played and was paused repeatedly for Corporal Kennedy to explain what was occurring. During Corporal Kennedy's initial encounter with Shay, he asked for identification. Shay told him he did not have his wallet and had no identification. During the officer-safety pat down (approved by the majority), Corporal Kennedy felt what he eventually identified as Shay's wallet in Shay's front right pocket. The majority sets forth only Corporal Kennedy's initial testimony on direct examination, but Corporal Kennedy further stated on direct, "And the wallet is in [Shay's] right side pocket right there. And he does-after I feel that that's what it is and nothing else-no weapons-he pulled it out and gave it to me." He repeated this testimony during cross-examination, stating Shay "handed his wallet to me."
Obviously, my review of the audio/video differs from the majority's version. While it is a given the video is dark and simply does not show who pulled the wallet out of Shay's pocket, the simultaneous audio supports Corporal Kennedy's testimony. The audio appears to confirm that Corporal Kennedy voiced his surprise at something after the wallet was passed to him. He then immediately pitched the wallet onto the top of the vehicle with instructions to his fellow officer to look at it. At the close of the evidence, the circuit court found, "He pulls it out. I didn't hear he handed it to him, but I assume when he pulled it out, he meant for the officer to have it."
Here the suppression determination turns on consent. There was no other testimony given at the suppression hearing. There was no evidence to contradict Corporal Kennedy's testimony. It was the circuit court's decision to determine whether Corporal Kennedy was a credible witness; the audio/video did not contradict Corporal Kennedy's testimony; and the circuit court found that when Shay pulled his wallet out of his pocket, he meant for Corporal Kennedy to have it. On this record, I will not *895 go behind the circuit court and second-guess its findings. Shay makes no argument to our court on the issue of consent, even though that was the sole basis on which the circuit court upheld the search of his wallet. Based on our standard of review and the totality of the evidence (considering the fact Shay has made no argument on appeal about consent), I would affirm.
I, therefore, dissent.